STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael W. CARLSON, Defendant-Appellant-Petitioner.

Supreme Court

*No. 01–1136–CR. Oral argument September 12, 2002.—Decided May 13, 2003.*

2003 WI 40

(Also reported in 661 N.W.2d 51.)

For the defendant-appellant-petitioner there were briefs by *Steven L. Miller* and *Miller & Miller,* River Falls, and oral argument by *Steven L. Miller.*

For the plaintiff-respondent the cause was argued by *Eileen W. Pray,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

¶ 1.   N. PATRICK CROOKS, J.   We reverse the court of appeals' decision, which affirmed an order by the Brown County Circuit Court, which denied a motion for a new trial. The motion claimed that one of the jurors could not understand English sufficiently to serve as a juror.

¶ 2.   We hold that an ability to understand the English language is necessary in order to satisfy the requirements Wis. Stat. § 756.02 and § 756.04 (1999–2000).[1] If a potential juror indicates on the juror questionnaire that he or she is unable to understand English, his or her name shall be struck from the juror pool. If a juror who does not meet the statutory requirements of Wis. Stat. § 756.02 is impaneled, then the entire trial process may be nothing more than an "exercise in futility." *State v. Coble,* 100 Wis. 2d 179, 216, 301 N.W.2d 221 (1981) (Coffey, J., concurring).

¶ 3.   It is clear here that juror Tony Vera (Vera) did not understand English, indicated that on the Juror Questionnaire, and yet his name was not struck as required. We hold that the circuit court failed to follow the statutory requirements, in regard to juror Vera, and failed to apply those requirements to the evidence presented at the postconviction motion hearing, thus reversal of Michael Carlson's conviction is necessary, and there must be a remand for a new trial.

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted. Wis. Stat. § 756.02 states:

> Every resident of the area served by a circuit court who is at least 18 years of age, a U.S. citizen and able to understand the English language is qualified to serve as a juror in that circuit unless that resident has been convicted of a felony and has not had his or her civil rights restored.

¶ 4. Michael Carlson was convicted of second-degree sexual assault as a repeater in violation of Wis. Stat. §§ 940.225(2)(a) and 939.62(1)(c).

¶ 5. Following trial, Carlson moved for postconviction relief, seeking a new trial on the grounds that one of the jurors could not understand English sufficiently to serve as a juror. The court of appeals concluded that the circuit court decision, finding that the juror sufficiently understood English, was not clearly erroneous and affirmed. We granted the petition for review and now reverse and remand for a new trial, since the statutory requirements of Wis. Stat. §§ 756.02 and 756.04 were not followed.

¶ 6. Prior to jury duty, all potential jurors receive a "Juror Qualification Questionnaire."[2] This is an official form mandated by Wis. Stat. § 758.18, which contains questions and answers relating to the statutory qualifications set forth in Wis. Stat. § 756.02. The prospective jurors return these forms to the clerk of courts office, where the clerk or a deputy clerk reviews the questionnaires to determine whether any potential juror answered a question in a way that would disqualify that potential juror from jury duty. *See* Wis. Stat. § 756.04(9).[3] Pursuant to Wis. Stat. § 756.04(9), the name of a person found to be not qualified for jury service shall be struck.

---

[2] The facts of the underlying offense are not relevant to our discussion or analysis.

[3] Wis. Stat. § 756.04(9):

The clerk *shall* randomly select names from the department list or master list and *strike the name of any person randomly selected whose returned juror qualification form shows that the person is not qualified for jury service under s. 756.02.* The clerk shall certify that the names were selected in strict conformity with this chapter . . . . (Emphasis added.)

¶ 7. In addition, the juror questionnaire form contains a declaration by the potential juror that indicates that the "responses are true to the best of his or her knowledge." *See* Wis. Stat. § 756.04(6)(c). A forfeiture of up to $500 may be imposed upon a willful misrepresentation of "any material fact or failure to return the completed qualification form within 10 days after receipt . . . ." Wis. Stat. § 756.30(1). *See also* Wis. Stat. § 756.04(7).

## I. FACTS ESTABLISHED AT POSTCONVICTION HEARING

A. The Following Facts Were Presented Without Objection.

¶ 8. Tony Vera is an immigrant from Laos. He became a United States citizen approximately eight years ago, and has been in the United States for 20 years.

¶ 9. In early 2000, Vera received the juror questionnaire and checked "no" where the form asked if he could "understand the English language." The clerk of courts or deputy clerk did not disqualify Vera as required by Wis. Stat. § 756.04(9), and a computer randomly placed him on the jury panel for Carlson's trial.

¶ 10. During voir dire, questions were addressed to the panel generally, and follow-up questions were asked only of a potential juror who raised his or her hand. Neither counsel, nor the circuit court judge, the Honorable Michael G. Grzeca, asked the panel about understanding English. Vera never raised his hand and never displayed any behavior that caused counsel or the judge to question his understanding of English.

¶ 11. The trial began on March 1, 2000. During deliberations, the jury sent a note to the judge that

stated: "Dear sir, we believe that you need to talk to Tony. It is our belief that he did not understand most of the trial proceedings." A long discussion took place at which various options were discussed with the Court. A concern was raised whether individual questioning of Vera would be viewed as pressuring him to change his vote. Ultimately, the circuit court judge decided not to take any action.

¶ 12. The jury found the defendant, Carlson, guilty. After the jury returned a guilty verdict, the judge polled the jury and Vera, along with the other jurors, responded "yes" to the question: "[I]s that your verdict?"

¶ 13. Carlson's trial attorney testified he had no knowledge that Vera, or any other juror, had a problem understanding the English language. That attorney stated that had he known about Vera's lack of English language comprehension he would have asked that he be removed for cause.

¶ 14. Vera later asserted at the postconviction hearing, the Honorable Mark A. Warpinski presiding, that he had attempted to alert the bailiff prior to trial that he did not understand English, but his concerns were not addressed. Vera testified about his inability to communicate in English. He stated that he could not understand people speaking English on the street, that his roommate did not speak English, and that he only regularly conversed in English with his boss and a co-worker. It was necessary that H & R Block prepare his tax returns for him, and that he did not need English to perform his job. While testifying at the motion hearing, defense counsel and the prosecutor questioned Vera in English, and he was able to respond in English without the aid of an interpreter. He was able to answer confusing questions only when they

were rephrased. In his brief, counsel for Carlson argues from the evidence permitted at the postconviction hearing as follows:

> Looking only at the uncontested testimony, Vera clearly lacked an ability to understand English *in a narrative form*. He admitted this. When asked if he understood spoken English, he answered: "Just a little bit." (R 100:42). He admitted he could not understand people who speak to him on the street. (R 100:45). He admitted he could not understand his "teachers." (R 100: ). He admitted he only understood "some" television. (R 100:52). He did not understand when someone verbally offered him a cigarette. (R 100:57). While Vera did answer some simple and primarily leading questions during the postconviction hearing, any question which called for even the slightest complexity of English comprehension or articulation stumped him. He could not, for example: "describe his typical day;" explain what he did for his job; or describe *any* television show he recently saw. (R 100:45, 46, 55). Whatever else the record may show, Vera cannot possibly be held to understand trial testimony when he is unable to comprehend a simple exchange of words on the street. (footnotes omitted).

Def.-Appellant-Pet'r's Br. at 18–19.

¶ 15.   At the postconviction motion hearing, Vera testified that he has lived in the United States for twenty years, the last eight as a citizen. As part of his citizenship test, he responded to one written and one oral question in English. He obtained a fishing license and a driver's license, the latter requiring him to pass a written exam in English. Vera could understand television somewhat, and enjoyed watching the Discovery Channel and football, which he understood. Although he had only studied English as a second language for a limited time in Green Bay, he testified that he read and

filled out the jury questionnaire himself. He was also capable of ordering off of a menu written in English when he went out to eat.

¶ 16.  At the time of this trial, Vera worked at Krueger International on the assembly line. His boss, Chad Watermolen, testified that Vera only spoke English when spoken to in English, and had difficulty understanding things at work. Krueger International offered English classes, but to Watermolen's knowledge, Vera never attended them. His lack of understanding of the English language led to poor reviews, and required Watermolen to speak slowly to him using small words. Watermolen testified that he often had to show Vera how to perform a task, not just tell him how to do it, before Vera understood.

B. Facts Presented Through Offer of Proof at Postconviction Hearing.

¶ 17.  The State objected to some evidence offered at the postconviction motion hearing as violating Wis. Stat. § 906.06(2).[4] Carlson presented this evidence in the form of an offer of proof. In the offer of proof, Vera

---

[4] Wis. Stat. § 906.06(2): INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT.

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received.

stated that he did not understand the witnesses or the judge at trial. He also said that he was "confused" during the trial.

¶ 18. Because of Vera's silence, the other jurors were not immediately aware of his difficulty with the English language. One juror stated that when she asked if Vera would like a cigarette, he just smiled and did not seem to understand. Another juror stated, in the offer of proof, that when the jurors went out for a meal, Vera had difficulty ordering a sub sandwich. In addition, one of the jurors confirmed that Vera did not participate in the deliberations at any level. She testified that it was obvious that Vera did not understand the trial testimony, did not understand the juror discussions, and did not understand what the jury was supposed to be doing. The jurors were so concerned over Vera's lack of understanding that they requested an interpreter from the bailiff, but were told that none was available.[5]

---

[5] The following is the exchange that took place between a juror and the judge at the end of the postconviction hearing:

Ms. Cecco: Your Honor, may I say something?

The Court: No, I'm sorry ma'am, Miss Cecco, I have been watching—

Ms. Cecco: He did not understand.

The Court: That's enough.

Ms. Cecco: I believe in this system and it's not working here.

The Court: I'm going to tell you this so you have an understanding because I appreciate the fact that you appeared as a juror. There are two different issues here. We couldn't get to the second one for the reasons I found. If I'm wrong the Appellate Court will reverse this and the [sic] come back here and there will be a new trial. So this isn't the final word in this matter. Ma'am, that's all we can really say at this point and I appreciate the part of this, the fact that—

¶ 19. As noted above, we must address whether the circuit court failed under the circumstances presented here, to comply with the statutory provisions of Wis. Stat. § 756.02 and § 756.04, and to apply those provisions to the facts established at the postconviction motion hearing.

## II. STATUTORY REQUIREMENTS

¶ 20. As noted previously, Wis. Stat. § 756.04(9) requires the clerk of courts to "strike the name of any person randomly selected whose returned juror qualification form shows that the person is not qualified for jury service under § 756.02." It is undisputed that Vera checked "no" on the jury qualification questionnaire in response to the question, "Can you understand the English language?" It is also undisputed that it is the clerk of court's practice, in compliance with Wis. Stat. § 756.04(9), to disqualify a person from jury duty, if the person answers "no" to the English comprehension question.

¶ 21. In this case, the clerk of courts did not disqualify Vera and his name was entered into the computer for random jury selection.

¶ 22. It is clear from the facts permitted in evidence at the postconviction motion hearing that Vera did not meet the statutory qualifications for jury service pursuant to Wis. Stat. § 756.02. First, Vera unequivocally stated on his Juror Qualification Questionnaire he could not understand English. Second, Carlson maintains, and we agree, that the evidence permitted at the

Ms. Cecco: It's very difficult to live with.

The Court: Then you shouldn't have voted for the decision. That's all. Thank you.

postconviction motion hearing illustrates that Vera was unable to meet the statutory requirements to understand the English language. Carlson's attorney argues that Vera did not "comprehend the evidence and arguments presented at trial."[6] As noted above, Vera testified about his inability to communicate in English. He stated that he could not understand people speaking English on the street, that his roommate did not speak English, and that he only regularly conversed in English with his boss and a co-worker. Further, he stated that it was necessary that H & R Block prepare his tax return forms for him, and that his job required no English. In addition, Vera's boss, Watermolen, testified that Vera's comprehension of the English language led to Vera's poor reviews, and required Watermolen to speak slowly using small words. Watermolen also testified that he often had to show Vera how to perform a task, not just tell him how to do it, before Vera understood. The note sent to the circuit judge from the jurors themselves, along with the contact with the bailiff by Vera, also demonstrate that Vera had significant language difficulties in understanding the trial proceedings.

## III. CIRCUIT COURT DECISION ON NEW TRIAL

¶ 23.  Next, we must address whether the circuit court erred as a matter of law in failing to apply the statutory standards for a qualified juror.

---

[6] Pet. Br. at 14 (citing *State v. Gallegos,* 88 N.M. 487, 489, 542 P.2d 832, 834 (N.M. Ct. App. 1975) (" . . . a juror who does not possess a working knowledge of English would be unable to serve because he cannot possibly understand the issues or evaluate the evidence to arrive at an independent judgment as to the guilt or innocence of the accused").

¶ 24. A trial court's findings of fact will be upheld unless clearly erroneous. *State v. Broomfield,* 223 Wis. 2d 465, 481, 589 N.W.2d 225 (1999). Whether the facts amount to prejudice requiring a new trial is a matter of law. *Id.* at 480. However, the decision to grant or deny a new trial generally lies within the discretion of the trial court. *State v. Wyss,* 124 Wis. 2d 681, 717–18, 370 N.W.2d 745 (1985). Nonetheless, an exercise of discretion based on an erroneous application of the law is an erroneous exercise of discretion. *State v. Martinez,* 150 Wis. 2d 62, 71, 440 N.W.2d 783 (1989).

¶ 25. According to the rules set forth above, in order to overturn the circuit court's decision that Vera had sufficient English comprehension necessary to be a qualified juror, this court must find that the circuit court's decision on the postconviction motion was clearly erroneous. *See* Wis. Stat. § 805.18(2). A holding of "clearly erroneous" often involves an erroneous application of law.

¶ 26. In this case, at the postconviction motion hearing, both admitted evidence, and evidence presented only through an offer of proof were before the circuit court judge. However, because we hold that the admitted evidence convincingly demonstrates Vera's inadequate English comprehension and, thus, his lack of qualification to serve as a juror, it is clear that the circuit court erred as a matter of law in finding that Vera's English comprehension was statutorily sufficient. In fact, the clear dictates of the statutes were not followed. We need not, therefore, engage in an analysis of whether the evidence, which was not permitted to be offered, should have been considered under Wis. Stat. § 906.06(2).

¶ 27. In order to satisfy Wis. Stat. § 756.02, a juror must "understand the English language."

¶ 28. This court has recognized the potential problems with regard to non-English speaking jurors:

> The increasing complexity of the issues presented to juries . . . requires more than a minimum "understanding" of the English language on the part of potential jurors. Jurors today must decide cases raising difficult and complicated questions . . . It makes no sense to argue about the nuances of complicated instructions, if we have no assurance that the jurors sitting in the case have the linguistic ability to recognize, comprehend, analyze or understand the same. If they do not, the instructions are an exercise in futility and the parties litigant are not receiving due process of law.

*State v. Coble,* 100 Wis. 2d 179, 216, 301 N.W.2d 221 (1981) (Coffey, J., concurring).

¶ 29. In arriving at a decision, the circuit court here failed to require that the statutory requirements set forth in Wis. Stat. § 756.02 and § 756.04 be followed, and failed to apply those statutory provisions to the facts established at the postconviction motion hearing. The circuit court judge that decided the motion stated:

> I think it's very difficult to ask a court to establish a test that would screen out people as participants in the jury system.
>
> . . . .
>
> . . . I think this is a very dangerous area in which to venture to say that because someone has less of an understanding of the English language than someone else that that automatically disqualifies them.

¶ 30. Instead, the circuit court, attempted to evaluate the facts presented during Vera's testimony at the motion hearing to illustrate that Vera's level of

English comprehension was satisfactory. In reaching its decision, the circuit court appeared to emphasize Vera's citizenship status and his presumptive ability to understand at least a survival level of English in order to become a citizen:

> What I know is this: That our government has constructed an admissions test to this country which is a citizenship test which is the bedrock of the person's ability to serve on a jury. If you are not a citizen you can't serve. So the government has conducted, for those people not born in this country, a screening mechanism and [Vera] participated through that screening mechanism and was certified by the United States government as a person who could be a citizen of this country.

The court went on to note:

> The indicia that we have here and objective test, if you will, is that this man took a test to become a citizen of this country and he passed that test. And he responded that there was a written question and an oral question that he passed the test. And if that's the only objective standard we have I think it's a helpful one. It's one that most of us don't have to go through.
>
> . . . .

Recognizing the need for a clear standard, the circuit court judge stated:

> And maybe some other mechanism has to be established, but I'm going to find that [Vera] has a sufficient understanding of the English language to serve as a juror based upon the record that was made here.

¶ 31. In addition to the circuit court's decision, the court of appeals held that the circuit court had not erroneously exercised its discretion, and found that Vera's English was "sufficient[ ] to fairly and completely

111

try the case." *State v. Carlson,* 2001 WI App 296, 249 Wis. 2d 264, 638 N.W.2d 646.

¶ 32.  The State agrees with the court of appeals, and adds that all that is required under the federal standard for English comprehension for jury service is simply the ability to read and fill out the jury qualification questionnaire. Resp't's Br. at 15 (citing 28 U.S.C. §1865(b)(2) and (3)). The State maintains that it is sufficient if that standard is met, and that the federal standard for English comprehension was purposefully set low in order to ensure that juries represent a fair cross section of the community. *Id.* at 15–16 (citing *United States v. Pellegrini,* 441 F.Supp. 1367, 1371 (E.D. Pa. 1977), *aff'd,* 586 F.2d 836 (3rd Cir.) *cert. denied,* 439 U.S. 1050 (1978)).

¶ 33.  While we recognize the merits of a jury that represents a fair cross section of the community, we, nevertheless, agree with the argument set forth by Carlson that Vera did not understand English, indicated that on the Juror Questionnaire, did not have his name struck, and, therefore, failed to satisfy the statutory requirements for a qualified juror. On the one hand, it is important to ensure that jurors represent a fair cross section of the community, but on the other hand, it is important to make sure that a juror meets the statutory qualifications regarding English comprehension.[7]

---

[7] It is important to note, since it may be important for future cases, that Wis. Stat. Ann. § 885.38(1)(b) (West 2002) requires the use of an interpreter in circuit and appellate courts when a person has "Limited English proficiency." The statute states:

"Limited English proficiency" means any of the following:

¶ 34. The State conceded before the court of appeals that a juror must be able to "comprehend testimony." (State's court of appeals Br. at 9). In fact, the State cited *State v. Turner*, 186 Wis. 2d 277, 284, 521 N.W.2d 148 (Ct. App. 1994), in which the court of appeals held that constitutional guarantees of an " 'impartial jury' and 'due process of law,' require that a

1. The inability, because of the use of a ●language other than English, to adequately understand or communicate effectively in English in a court proceeding.

2. The inability, due to a speech impairment, hearing loss, deafness, deaf-blindness, or other disability, to adequately hear, understand, or communicate effectively in English in a court proceeding.

*See also* Wis. Stat. Ann. § 885.38(3)(a) and (c) (West 2002). The statute states:

(3)(a) In criminal proceedings and in proceedings under ch. 48, 51, 55, or 938, if the court determines that the person has limited English proficiency and that an interpreter is necessary, the court shall advise the person that he or she has the right to a qualified interpreter and that, if the person cannot afford one, an interpreter will be provided at the public's expense if the person is one of the following:

1. A party in interest.

2. A witness, while testifying in a court proceeding.

3. An alleged victim, as defined in s. 950.02(4).

4. A parent or legal guardian of a minor party in interest or the legal guardian of a party in interest.

5. Another person affected by the proceedings, if the court determines that the appointment is necessary and appropriate.

. . . .

(c) If a person with limited English proficiency, as defined in sub. (1)(b)2., is part of a jury panel in a court proceeding, the court shall appoint a qualified interpreter for that person.

criminal defendant not be tried by a juror who cannot comprehend testimony." The State also acknowledged the concurrence in *Coble,* which requires "more than a minimum 'understanding' of the English language on the part of potential jurors." *State v. Coble,* 100 Wis. 2d 179, 216, 301 N.W.2d 221 (1981).

¶ 35.   Although the court of appeals also seemed to emphasize Vera's citizenship test, as well as other evidence previously noted, as proof of his English comprehension, we agree with Carlson that passage of that test is insufficient to prove Vera's ability to understand English.

¶ 36.   There is no evidence in the record as to what this citizenship test actually involved. Vera also testified that the test was "very easy." More importantly, United States citizenship and the ability to understand English are independent statutory qualifications. Wis. Stat. § 756.02 ("Every resident . . . who is at least 18 years of age, a U.S. citizen and able to understand the English language is qualified . . . ."). Without more in the record, the circuit court erred by seeming to assume that U.S. citizenship equated with an understanding of English.

¶ 37.   Consistent with what Vera stated on his Juror Qualification Questionnaire, the evidence presented at the postconviction hearing demonstrates that he could not understand English.

¶ 38.   In failing to apply the clear statutory requirements, by allowing Vera to serve on the jury when he clearly stated on the jury questionnaire that he did not understand English, and in denying the postconviction motion, the circuit court erroneously exercised its discretion. In accord with Wisconsin statutes, Vera should have been struck from the list as being unqualified. *See State v. McCallum,* 208 Wis. 2d 463, 473, 561

N.W.2d 707, 710 (1997) (failure to apply the proper legal standard constitutes an erroneous exercise of discretion).

## IV. HARMLESS ERROR

¶ 39.   The State claims that any statutory error in impaneling Carlson's jury was harmless. In support of its position, the State maintains that "[a] technical violation of the jury qualification statute does not warrant reversal, unless a party has been prejudiced." Resp't's Br. at 33 (citing *Coble,* 100 Wis. 2d at 211). The State asserts that Carlson was not prejudiced by the inclusion of Vera on the jury, and therefore, any error was harmless.

¶ 40.   Carlson, however, argues that the error was not harmless, since it involved substantial rights, and that the clerk should have stricken Vera's name from the jury pool as required by Wis. Stat. § 756.04(9).

¶ 41.   As noted previously, Wis. Stat. § 756.04(9) provides in pertinent part that:

> The clerk shall randomly select names from the department list or master list and *strike the name of any person randomly selected whose returned juror qualification form shows that the person is not qualified for jury service under s. 756.02.* (Emphasis added.)

¶ 42.   It is clear that the error of allowing Vera to serve as a juror contrary to the statutes was not harmless, because his stated inability to understand English prevented him from meaningful participation in the trial process. *See* Wis. Stat. § 805.18. *See also, e.g., United States v. Okiyama,* 521 F.2d 601 (9th Cir. 1975) (failure to substantially comply with jury impan-

elment statutes warranted dismissal of federal indictment, regardless of prejudice showing, especially where the selection process created serious risks that those selected were not sufficiently proficient in English to understand the proceedings in which they were to participate). We agree with the holding in *United States v. Silverman*, 449 F.2d 1341 (2d Cir. 1971), that a showing of actual prejudice is established if a juror "had been unable to understand English." *Id.* at 1344. Here the jury impanelment statutes were not followed, and, in addition, it is clear that Vera really did not have sufficient understanding of English so that he could meaningfully participate in the trial process.

¶ 43.   In *State v. Coble*, 100 Wis. 2d 179, 210–212, 301 N.W.2d 221 (1981), we were presented with the issue of whether the Milwaukee county jury selection procedure for preparing the jury list complied with the statutory requirements of chapter 756, Wis. Stats. *Id.* at 182. In particular, question 3 of the Milwaukee Juror Qualification Form asked: "3. Can you read and write the English language?" *Id.* at 191. In looking at question 3, we reasoned that it was in contravention of Wis. Stat. § 756.01(1), which, at the time, provided that persons "who are able to read and understand the English language are qualified to be drawn as jurors." *Id.* In 1977, the legislature amended the statute, and no longer required that a person be able to write the English language to qualify as a juror. *Id.* at 192. Because of the legislature's omission of the requirement to be able to write the English language in the statute, we concluded that the wording of question 3 of the Milwaukee County Juror Qualification Questionnaire did not meet the statutory requirements of Wis. Stat. § 756.01, and should be modified. *Id.* at 193.

¶ 44. In *Coble*, we held that while the harmless error doctrine applies to statutory irregularities involving jury selection, substantial rights of a party are affected when the jury selection procedure "fails to insure, as does the statutory procedure, that a jury composed of persons qualified under the statutes is selected at random from a broad cross-section of the community." *Id.* at 212.

¶ 45. While *Coble* is similar to the present case in that it discusses the statutory requirements of chapter 756, Wis. Stats., it is nevertheless distinguishable. Unlike *Coble*, we are only concerned with the requirement that a juror such as Vera be able to *understand* the English language. Consequently, while some of the language and reasoning in *Coble* is helpful, it is not controlling in this case.

¶ 46. The harmless error rule adopted last term by this court in *State v. Harvey*, 2002 WI 93, 254 Wis. 2d 442, 647 N.W.2d 189, and *State v. Tomlinson*, 2002 WI 91, 254 Wis. 2d 502, 648 N.W.2d 367, is one that is applicable for evaluating an error's harmlessness, whether the error is constitutional, statutory, or otherwise. *Harvey*, ¶ 40; *State v. Dyess*, 124 Wis. 2d 525, 543, 370 N.W.2d 222 (1985). Application of that rule here does not change our conclusion in this case, since we cannot conclude beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. The circumstances here preclude such a conclusion.[8]

---

[8] Our decision in *State v. Faucher*, 227 Wis. 2d 700, 596 N.W.2d 770 (1999), discussed statutory bias in regard to juror selection. That analysis was based on this court's review of Wis. Stat. § 805.08(1). We concluded that a person who is statutorily

¶ 47. An ability to understand the English language is necessary in order to satisfy the statutory requirements of Wis. Stat. § 756.02 and § 756.04. If a juror cannot meet the statutory requirements, then the entire trial process may be nothing more than an "exercise in futility." *Coble,* 100 Wis. 2d at 216. It is clear that Vera did not meet those requirements and, therefore, he was not qualified to serve as a juror. The error here in failing to follow the statutory provisions and to apply them to the facts established at the postconviction motion hearing was not harmless. Here Carlson was prejudiced when a juror who was not qualified under the statutes, and who did not have sufficient understanding of English so that he could meaningfully participate in the trial process, was allowed to serve as a juror.

¶ 48. Accordingly, we reverse the decision of the court of appeals and Carlson's conviction, and remand this matter to the circuit court for a new trial.

*By the Court.*—The decision of the Court of Appeals is reversed, and the cause is remanded to the circuit court.

¶ 49. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*concurring*). I agree with the majority that the decision of the court of appeals must be reversed, the defendant's conviction vacated, and the case remanded to the circuit court for a new trial. I disagree, however, with the reasoning underlying the court's decision.

biased "may not serve on a jury regardless of his or her ability to be impartial." *Faucher* at 717. While not directly on point in regard to the circumstances presented here, that case lends further support to our conclusion that Vera should not have served as a juror given his inability to understand English.

¶ 50. I write separately for two reasons. First, I conclude that this case presents a straightforward example of error for failure to comply with a clear, mandatory statute that can be decided without resort to setting a statutory threshold for English language comprehension or second-guessing the factual findings of the circuit court judge.

¶ 51. Second, I conclude that the harmless error test set forth in *State v. Coble,* 100 Wis. 2d 179, 301 N.W.2d 221 (1981), is the proper test to apply in this case.[1] The majority opinion's *Harvey*[2] harmless error analysis is in error.

---

[1] I agree with the dissenting opinion of Justice Sykes, the author of *State v. Harvey,* 2002 WI 93, 254 Wis. 2d 442, 647 N.W.2d 189, that Wisconsin case law—including *Harvey*— should not be interpreted as abandoning the *Chapman v. California,* 386 U.S. 18 (1967), harmless error test in favor of a test that weighs the sufficiency of the evidence. *See State v. Harvey,* 254 Wis. 2d 442, ¶¶ 68–76 (Abrahamson, C.J., dissenting). It remains true in Wisconsin that an error is prejudicial when it appears beyond a reasonable doubt that the error complained of "contribute[d] to the verdict obtained," *see* dissent, ¶ 85. An error is harmless beyond a reasonable doubt if it is clear "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman,* 386 U.S. at 24. A mere weighing of the evidence is insufficient to reach this conclusion. *See State v. Tucker,* 2003 WI 12, ¶ 37, 259 Wis. 2d 484, 657 N.W.2d 374 (Abrahamson, C.J., concurring) (criticizing the majority's conclusion in a case addressing the harm of erroneously empanelling an anonymous jury that "in light of the overwhelming evidence in his case, it is clear beyond a reasonable doubt that a rational jury would have found [the defendant] guilty notwithstanding" the circuit court's error in empanelling an anonymous jury).

[2] *See State v. Harvey,* 2002 WI 93, ¶ 49, 254 Wis. 2d 442, 647 N.W.2d 189.

## I

¶ 52. The circuit court in the present case failed to comply with a clear, mandatory statute. Wisconsin Stat. § 756.04(9) (1999–2000) requires, in no uncertain terms, that any name randomly selected for jury duty whose returned questionnaire indicates that he or she is not qualified for jury service under Wis. Stat. § 756.02 must be struck. Section 756.04(9) reads in relevant part:

> The clerk *shall* randomly select names from the department list or master list and *strike the name of any person randomly selected whose returned juror qualification form shows that the person is not qualified for jury service* under s.756.02. The clerk shall certify that the names were selected in *strict conformity* with this chapter.[3]

¶ 53. Wisconsin Stat. § 756.02, governing juror qualifications, provides that a person is qualified to serve as a juror if he or she is "at least 18 years of age, a U.S. citizen and able to understand the English language."[4]

¶ 54. As the majority opinion explains, it is undisputed that (1) Vera returned his juror questionnaire having marked "no" in response to the question, "Can you understand the English language?"; (2) the clerk

---

[3] Wis. Stat. § 756.04(9) (emphasis added). All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

[4] Wisconsin Stat. § 756.02 reads in full:

Every resident of the area served by a circuit court who is at least 18 years of age, a U.S. citizen and able to understand the English language is qualified to serve as a juror in that circuit unless that resident has been convicted of a felony and has not had his or her civil rights restored.

did not disqualify Vera as required by Wis. Stat. § 756.04(9); and (3) a computer randomly placed Vera on the jury panel for the defendant's case. In short, § 756.04(9) was not followed. The failure to apply the clear statutory requirements of Wis. Stat. § 756.04(9) is an error of law.

## II

¶ 55.   The only issue is whether the error of law in failing to follow Wis. Stat. § 756.04(9), resulting in Vera's placement on the jury, requires reversal under Wisconsin's harmless error statute.[5] On this point as well, I agree with the majority opinion's bottom line that the error requires reversal, but again I disagree with the majority's reasoning and legal analysis.

¶ 56.   The majority opinion ultimately concludes that a circuit court's erroneous decision to seat a juror who does not understand the English language is subject to the harmless error analysis established in *State v. Harvey*, 2002 WI 93, 254 Wis. 2d 442, 647 N.W.2d

---

[5] Wisconsin Stat. § 805.18 sets forth the test for harmless error as follows:

> (1) The court shall, in every stage of an action, disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party.

> (2) No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of selection or misdirection of the jury, or improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

189.[6] Despite this conclusion, the majority opinion does not apply the *Harvey* test. The majority opinion simply states that it "cannot conclude beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."[7]

¶ 57. The reason the majority opinion does not actually apply the *Harvey* harmless error test to the facts of this case is that it cannot be applied to the facts of this case. In short, the *Harvey* test is not applicable in the present case because it assesses for a harm unrelated to the alleged error in the present case.[8]

¶ 58. The *Harvey* decision holds that an error is harmless if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.[9] Yet the inquiry in the present case is, simply stated, whether the jury was "rational"—that is, whether all members of the jury were competent to sit.[10] Here, I agree with the dissenting opinion.[11]

¶ 59. A finding of guilt by a jury that is not competent to sit is a "defect affecting the framework

---

[6] Majority op., ¶ 46.

[7] *Id.*

[8] There may be several harmless error tests depending on the nature of the right violated. *In re Jayton S.*, 2001 WI 110, ¶ 40, 246 Wis. 2d 1, 629 N.W.2d 768 (Abrahamson, C.J., concurring) (quoting 5 Wayne R. LaFave et al., *Criminal Procedure* § 27.6(b), at 9398–39 (2d ed. 1999)). *See also* dissent, ¶ 88.

[9] *Harvey*, 254 Wis. 2d 442, ¶ 49.

[10] *See Tucker*, 259 Wis. 2d 484, ¶ 40 (Abrahamson, C.J., concurring) ("The *Harvey* standard . . . is inapplicable because our inquiry is whether the jury was rational, that is, whether the jury was impartial and unbiased, not whether an error during trial was harmless.").

[11] Dissent, ¶ 88.

within which the trial proceeds, rather than simply an error in the trial process itself."[12] Consequently, we assess the error in the present case for "harm" by determining whether, in fact, the failure to comply with Wis. Stat. § 756.04(9) led to the seating of a juror not competent to sit.[13]

¶ 60. This court has set forth the appropriate framework for gauging an error in complying with the statutes governing jury selection in *State v. Coble*. The *Coble* court held that "irregularities" in the jury selection process are evaluated to determine whether there has been "substantial compliance" with the statutory requirements set forth for the preparation of the jury list.[14] "[T]he test for determining whether the jury selection procedure substantially complies with the statutes is to measure the procedure used against the jury selection statute and against the objectives of the statute and the objectives of the statutory provisions which have been violated."[15] If there has been substantial compliance with the statute, the error does not require reversal of the judgment.[16] If there is not substantial compliance with the statute, the error "has

---

[12] *Arizona v. Fulminante,* 499 U.S. 279, 310 (1991).

[13] *See State v. Lindell,* 2001 WI 108, ¶¶ 69–82, 245 Wis. 2d 689, 629 N.W.2d 223 (holding that whether a conviction will be reversed on an alleged error in jury selection focuses on whether the jury that actually sat on the case is impartial).

[14] *State v. Coble,* 100 Wis. 2d 179, 212, 301 N.W.2d 221 (1981).

[15] *Id.*

[16] The dissent and I both agree that *Coble* is the appropriate test.

affected the substantial rights of the party seeking to reverse or set aside the judgment."[17]

¶ 61.   I conclude that the jury selection process in the present case, because of the circuit court's error, was not in substantial compliance with the statute. The procedure employed by the circuit court in this case directly contravened Wis. Stat. §§ 756.02 and 756.04(9). The statutes require that any person who submits a juror qualification form that indicates he or she is unqualified to sit as a juror be struck. Nevertheless, in this case, a juror was impaneled who submitted his form indicating an inability to understand English.

¶ 62.   The objective of Wis. Stat. ch. 756 is to obtain "jurors on the basis of objective qualifications set forth in the statutes, selected at random, and from a broad cross-section of the community."[18] Section 756.04(6) sets forth "a juror qualification form" as the method by which "information necessary to determine if [a] person is qualified to serve as a juror" will be obtained. Section 756.04(9) states that a clerk shall strike the names of those persons whose juror qualification forms indicate that they are not qualified. The juror form in this case indicated that Vera was not qualified. Thus the failure to strike Vera's name frustrates the goal of relying on objective qualifications in obtaining jurors and contravenes the procedure set forth in § 756.04(9).

¶ 63.   The error in seating Vera cannot be viewed as "substantial compliance" with either the procedure set forth in the statutes or the objective of the statutes. Consequently, the error of law "affected the substantial

---

[17] Wis. Stat. § 805.18(2).

[18] *Coble,* 100 Wis. 2d at 213.

rights" of the defendant and a new trial is required. The weight of the evidence supporting the conviction is irrelevant.

¶ 64. For the foregoing reasons, I concur in reversing the decision of the court of appeals and remanding the cause to the circuit court.

¶ 65. I am authorized to state that Justice ANN WALSH BRADLEY joins this concurrence.

¶ 66. DIANE S. SYKES, J. *(dissenting)*. The defendant raises claims of statutory and constitutional error in the empanelment of Tony Vera as a juror on his case. English is a second language for Vera; his native language is Lao.

¶ 67. The majority opinion and the concurrence resolve the case on statutory grounds, concluding that the procedures prescribed in Wis. Stat. §§ 756.02 and 756.04 for the certification and empanelment of qualified jurors were violated. Vera had answered "no" to the question on his juror qualification form asking whether he could understand English. Wisconsin Statutes § 756.04(9) requires the clerk of circuit court to strike from the jury master list any juror whose qualification form indicates that he or she is not qualified to serve. Juror qualifications are specified in Wis. Stat. § 756.02, which requires, among other things, that jurors be "able to understand the English language."

¶ 68. The State and the defendant agree that the clerk's failure to strike Vera from the jury master list, based upon his "no" answer to the juror qualification form's question about his ability to understand English, violated the procedural requirements of Wis. Stat.

125

§ 756.04(9). They disagree about remedy.[1] The defendant acknowledges that a new trial is warranted only if

[1] The parties also disagree about the standard for evaluating a juror's English language competence for purposes of right-to-jury-trial and due process analysis under the Sixth and Fourteenth Amendments and their state constitutional counterparts. In addition, the parties disagree about the admissibility of certain evidence at the postconviction motion hearing under Wis. Stat. § 906.06(2), which generally prohibits impeachment of a jury verdict based upon juror testimony regarding the mental or deliberative processes of the jurors. *See Tanner v. United States*, 483 U.S. 107 (1987).

The prohibition against the admission of juror testimony to impeach a verdict has been recognized by the United States Supreme Court as a "near-universal and firmly established" rule; the only exception is juror testimony regarding an extraneous or outside influence that is alleged to have improperly affected the jury. *Id.* at 117. Whether an influence is considered extraneous or internal is "not based on whether the juror was literally inside or outside the jury room when the alleged irregularity took place; rather the distinction [is] based on the nature of the allegation," and "[c]ourts wisely have treated allegations of a juror's inability to hear or comprehend [testimony] at trial as an internal matter." *Id.* at 117–18. More specifically, "whether [a] juror sufficiently understood English [ ] [is] not a question of 'extraneous influence' ". *Id.* at 119 (citing *United States v. Pellegrini*, 441 F.Supp. 1367 (E.D. Pa. 1977), aff'd, 586 F.2d 836 (3d Cir.), *cert. denied*, 439 U.S. 1050 (1978)).

Neither the majority nor the concurrence reaches the constitutional or evidentiary issues presented in this case, although the majority refers at length to the statutorily incompetent evidence that was testified to by way of offer of proof after the State lodged its Wis. Stat. § 906.06(2) objection. Majority op., ¶¶ 17–18. The defendant's postconviction counsel conceded that some of this "offer of proof" evidence was incompetent under the statute, acknowledging that the State is on "solid ground in terms of 906.06 with regard to [juror] Sandra Cecco's testimony and certainly any testimony that happened in

126

this error is prejudicial or harmful; the parties disagree about whether prejudice or harmfulness has been shown.

¶ 69.   The majority and the concurrence both conclude that reversal and remand for a new trial is required. The majority initially appears to conclude that allowing Vera to serve on the defendant's jury when the statute dictated that he be struck was per se reversible. Majority op., ¶ 38. The majority nevertheless proceeds to hold that the statutory error is not harmless. Majority op., ¶ 46. The concurrence reaches the same conclusion by a different analysis. Concurrence, ¶¶ 63–64.

¶ 70.   I agree with the parties that the statutory error in this case is subject to harmless error analysis. The harmless error statute, Wis. Stat. § 805.18(2), explicitly encompasses errors in the "selection or misdirection of the jury," and this court specifically held in *State v. Coble,* 100 Wis. 2d 179, 301 N.W.2d 221 (1981), that the failure to comply with the jury selection procedures of Chapter 756 is subject to harmless error analysis.

¶ 71.   In *Coble,* as the majority notes, the error in question was the use of a jury questionnaire that asked prospective jurors whether they could read *and write* English, even though the juror qualification statute does not require the ability to write English. Applying the harmless error statute, Wis. Stat. § 805.18, this court held that "[t]he legislature obviously did not

the jury room." Although the majority declines to analyze the verdict impeachment issue under Wis. Stat. § 906.06(2), the evidence incompetent under that statute (including an exchange between the circuit court and juror Cecco) is included in and therefore apparently influences the majority opinion. Majority op., ¶¶ 14, 17, 18 n.5, 22, 33, 37, 42, 47.

intend that all deviations from the statutory jury selection procedure would justify setting aside a verdict. The legislature intended the doctrine of harmless error to apply to jury selection." *Coble,* 100 Wis. 2d at 210–11.

¶ 72. The court in *Coble* further held that whether the error was harmless or prejudicial depended upon whether there was " 'substantial compliance' with the jury selection statute." *Id.* at 211. "Substantial compliance," the court said, is evaluated by reference to the underlying purposes of Chapter 756: "the test for determining whether the [challenged] jury selection procedure substantially complies with the statutes is to measure the procedure used against the jury selection statute and against the objectives of the statute and the objectives of the statutory provisions which have been violated." *Id.* at 212. The court stated that the purposes and objectives of Chapter 756 "are that all qualified citizens have the opportunity and the obligation to serve as jurors"; that "juries be selected from a broad cross-section of the community"; and that "juror qualifications are based largely on objective, rather than subjective, criteria." *Id.* at 212–13.

¶ 73. The error in *Coble* had the effect of excluding qualified jurors from jury duty, but the court ultimately concluded that it did not require reversal, i.e., that it was harmless, because the particular legislative purpose that was implicated—obtaining qualified jurors from "a broad cross-section of the community"—had not been frustrated. *Id.* at 213–14. Here, the error in question would be an error of inclusion, not exclusion: the clerk's failure to strike Vera based on his juror qualification form may have resulted in an unqualified juror being seated on the defendant's jury. *Coble* held that one of the purposes of Chapter 756 is to ensure

that juries are composed of citizens who are objectively qualified to serve. Accordingly, whether the clerk's statutory error in failing to strike Vera was harmless depends upon whether it actually resulted in the empanelment of an unqualified juror, here, a juror who in fact could not understand English.

¶ 74. On this point, the circuit court heard evidence, made detailed findings, concluded that Vera had an adequate understanding of the English language sufficient to allow him to fairly and impartially hear the case, and denied the defendant's motion for a new trial. The circuit court's factual findings are reviewed deferentially, and are overturned "only if they are clearly erroneous." *State v. Turner*, 186 Wis. 2d 277, 284, 521 N.W.2d 148 (Ct. App. 1994). Furthermore, a circuit court's decision on a motion for a new trial is reviewed deferentially, and is reversed only where there has been an erroneous exercise of discretion. *State v. Wyss*, 124 Wis. 2d 681, 717–18, 370 N.W.2d 745 (1985).

¶ 75. The majority opinion substitutes its own view of the facts regarding Vera's English-language competence for that of the circuit court, concluding that Vera did not have sufficient English language comprehension to be qualified as a juror. Majority op., ¶¶ 3, 26, 37. In so doing, the majority asserts that on this factual matter, the circuit court committed an *error of law:* "because we hold that the admitted evidence convincingly demonstrates Vera's inadequate English comprehension and, thus, his lack of qualification to serve as a juror, it is clear that the circuit court erred as a matter of law in finding that Vera's English comprehension was statutorily sufficient."[2] Majority op., ¶ 26.

---

[2] As noted above, the parties dispute, under Wis. Stat. § 906.06(2), the competence of much of the evidence at the

¶ 76. Thus, reviewing only a printed record, the majority declares itself to be in a better position to evaluate juror Vera's understanding of English than the circuit court judge who actually listened to, spoke with, and observed this juror during the course of the post-conviction hearing. In the analogous context of assessing a defendant's competence to stand trial, this court has noted the rationale for deferring to the circuit court:

> The circuit judge has a unique vantage point from which to make a competency determination because the judge has significant personal exposure to the defendant. The judge is better able to assess a defendant's orientation to time, place, and persons than an appellate court reviewing a paper record. Only the judge can evaluate whether the defendant answers a question quickly or haltingly, thereby showing whether the defendant grasps the inquiry. Only the judge can hear the inflection and volume of the defendant's voice and observe the defendant's posture, attention span, eye contact, and focus []. Only the judge can watch the defendant's reaction, including body language, to events in the courtroom.

*State v. Byrge,* 2000 WI 101, ¶ 44 n.18, 237 Wis. 2d 197, 226–27, 614 N.W.2d 477. These "compelling and familiar justifications for leaving the process of applying law to fact to the trial court" apply equally in this situation. *Id.* at ¶ 45 (quoting *Miller v. Fenton,* 474 U.S. 104, 114 (1985)).

---

postconviction hearing; some of it was submitted by offer of proof, and some of the admitted evidence may in fact fall within the statute's prohibition. Because the majority does not address the verdict impeachment issue under Wis. Stat. § 906.06(2), it is not entirely clear what evidence the majority relies upon to support its conclusion that Vera did not adequately understand English.

¶ 77. More particularly, the majority does not hold that the circuit court's factual findings are clearly erroneous, yet it overturns them based upon its own evaluation of the evidentiary record. In addition, although it generally asserts that the circuit court's conclusion regarding Vera's English language competence constituted an error of law, the majority does not identify any specific legal mistake committed by the circuit court. The only error identified is the clerk's failure to strike Vera from the jury master list as required by Wis. Stat. § 756.04(9). But this was a clerical error; it was not a legal error by the circuit court, nor can it be viewed as an unsupported factual finding or an erroneous exercise of discretion on the part of the circuit court. Everyone agrees that there was a statutory error in procedure committed by the clerk; the point of the postconviction motion hearing (in addition to adjudicating the claimed constitutional violation), was to determine the effect of the conceded clerical error for purposes of determining remedy, that is, to determine whether the error was harmful because it resulted in an unqualified juror actually being seated on the defendant's case.

¶ 78. The majority also does not hold that the circuit court applied an erroneous English-language standard to evaluate whether Vera was actually unqualified to sit on the defendant's jury. Rather, the majority simply disagrees with the circuit court's factual findings regarding Vera's English-language competence, and returns to the original statutory error on the part of *the clerk* to find an erroneous exercise of discretion on the part of *the circuit court:* "In failing to apply the clear statutory requirements, by allowing Vera to serve on the jury, when he clearly stated on the jury questionnaire that he did not understand English,

and in denying the postconviction motion, the circuit court erroneously exercised its discretion." Majority op., ¶ 38. This approach is legally circular and ignores the applicable standard of review by failing to defer as required to the circuit court's factual findings.

¶ 79. Having concluded that the circuit court erroneously exercised its discretion in denying the postconviction motion, it is not entirely clear why the majority proceeds to harmless error analysis. If the majority has already concluded, *before* conducting any analysis of the error's harmlessness, that a new trial should have been granted, then the majority has necessarily concluded that the error in question is per se prejudicial. In any event, the majority opinion goes on to conclude that the violation of Wis. Stat. § 756.04(9) was not harmless, and that reversal for a new trial is required.

¶ 80. The majority cites *United States v. Okiyama,* 521 F.2d 601 (9th Cir. 1975), and *United States v. Silverman,* 449 F.2d 1341 (2d Cir. 1971), as support for this conclusion. *Okiyama* involved the application of 28 U.S.C. § 1867, which provides a statutory remedy for substantial noncompliance with the federal statutes governing selection of grand and petit juries. The federal statutory scheme requires the motion alleging statutory noncompliance to be made before voir dire begins, or within seven days after the defendant discovered or could have discovered the noncompliance. *See,* 28 U.S.C. § 1867(a); *Okiyama,* 521 F.2d at 603. If on a timely motion "the court determines that there has been a substantial failure to comply" with the statutory requirements, "the court *shall* stay the proceedings pending the selection of a grand jury in conformity with

this title or dismiss the indictment, whichever is appropriate." 28 U.S.C. § 1867(d)(emphasis added); *Okiyama,* 521 F.2d at 603 n.1.

¶ 81.  Wisconsin's statute, Wis. Stat. § 756.04, differs from 28 U.S.C. § 1867 in that it does not prescribe any remedial procedure or statutory remedy for a lapse in jury selection procedure. *Okiyama,* therefore, does not support the majority's conclusion here.

¶ 82.  The defendant in *Silverman* brought his motion alleging a violation of juror qualification procedure postconviction, and therefore could not invoke the statutory remedy contained in 28 U.S.C. § 1867. *Silverman,* 449 F.2d at 1343–44. Under these circumstances, the court held that "[t]he inclusion in the panel of a disqualified juror does not require reversal of a conviction unless there is a showing of actual prejudice." *Id.* The juror in question in *Silverman* had answered "no" to the question on her juror qualification form asking whether she could read, write, speak, and understand the English language. *Id.* at 1343. The postconviction motion hearing had established to the district court's satisfaction that the juror could adequately understand and speak English, even though she could not adequately read or write it. *Id.* at 1342.

¶ 83.  The Second Circuit affirmed the defendant's conviction, deferring to the district court's conclusion that the juror could adequately understand English, although stating in dicta that if the juror "had been unable to understand English, clearly the verdict could not stand." *Id.* at 1344. Given the district court's findings regarding the adequacy of the juror's English language comprehension, the appellate court concluded that the juror's inability to adequately read and write English was harmless. *Id.* Thus, *Silverman* supports the majority's conclusion only to the extent that it held

133

that reversal is not required absent actual prejudice (again, assuming that this is the majority's holding). The case does not, however, support the majority's conclusion regarding the existence of prejudice here, inasmuch as the majority has substituted its view of the evidence for that of the circuit court on the question of Vera's ability to understand English.

¶ 84. Finally, the majority applies *State v. Harvey,* 2002 WI 93, 254 Wis. 2d 442, 647 N.W.2d 189, and *State v. Tomlinson,* 2002 WI 91, 254 Wis. 2d 502, 648 N.W.2d 367, in a conclusory fashion, without analysis or discussion of the nature of the error in question and the harm it is alleged to have caused. Perhaps this is because, as noted above, the majority has actually concluded that the statutory error is per se prejudicial. If that is what the majority means, then it should say so (although this would run up against the holding in *Coble*); if not, then there should be at least some discussion of how the harmless error rule applies to the error in question here.

¶ 85. In *Harvey,* this court adopted and applied *Neder v. United States,* 527 U.S. 1 (1999), in which the United States Supreme Court reaffirmed and refined the harmless error test of *Chapman v. California,* 386 U.S. 18 (1967). We noted that the Supreme Court in *Neder* restated the principle that although a "limited class of errors" are viewed as "structural" and require automatic reversal regardless of effect on the outcome (e.g., complete deprivation of counsel, trial before a biased judge), most errors, including constitutional ones, can be harmless. *Harvey,* 2002 WI 93, ¶ 37. We further noted that *Neder* reaffirmed the vitality of *Chapman*'s basic test for harmless error: " 'That test, we said, is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the

134

verdict obtained." ' " *Id.,* ¶ 44 (quoting *Neder,* 527 U.S. at 15–16, quoting in turn *Chapman,* 386 U.S. at 24).

¶ 86. The Court in *Neder* went on to restate the *Chapman* test in what we noted in *Harvey* was "somewhat different language": " 'Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?' " *Id.,* ¶ 46 (quoting *Neder,* 527 U.S. at 18). This difference in language, we said, did not constitute an abandonment of the *Chapman* test (to the contrary, *Neder* plainly reaffirmed *Chapman*), but, rather, a clarification by the Court of "what it takes to meet the test; that is, that in order to conclude that an error 'did not contribute to the verdict' within the meaning of *Chapman,* a court must be able to conclude 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *Id.,* ¶ 48 n.14 (quoting *Neder,* 527 U.S. at 18).

¶ 87. The *Neder/Chapman* harmless error test, adopted in *Harvey,* is necessarily quite broadly and generally stated, for use across a wide array of possible constitutional and statutory errors, whether evidentiary, procedural, or substantive. Its application must begin, however, with an evaluation of the error in question and the harm it is alleged to have caused. When applied to an error in the admission of evidence or an omitted or mistaken jury instruction, for example, it is appropriate to ask the *Neder* question regarding whether it is "clear beyond a reasonable doubt that a rational jury would have convicted absent the error" to determine whether the error contributed to the verdict within the meaning of *Chapman;* the focus is on the effect of the evidentiary or legal mistake on the case as a whole, presupposing a rational jury.

¶ 88. However, where, as here, the error in question pertains to the procedures employed in the selec-

tion of the jury, any inquiry into "whether a rational jury would have convicted" breaks down before it begins, because the error pertains to the jury itself, and the manner in which it was empanelled, rather than the evidence, trial procedure, or the substantive law. In these circumstances, whether it appears beyond a reasonable doubt that the error in question did not contribute to the verdict within the meaning of *Chapman, Neder* and *Harvey* depends upon an evaluation of the nature of the error that occurred in the jury selection process and the harm it is alleged to have caused.

¶ 89. Applied in this way, the very broad *Harvey/Neder/Chapman* test is not much different than the more specific articulation of harmless error analysis in *Coble* for violations of the juror qualification statutes. The latter assesses harmlessness by measuring the nature of the jury selection statutory violation in question against the objectives and purposes of the statute, which is essentially the same as assessing the nature of the jury selection error and the harm it is alleged to have caused, in order to determine if it appears beyond a reasonable doubt that the error "did not contribute to the verdict" within the meaning of *Harvey, Neder* and *Chapman*. Here, the error in question is a violation of the statute that requires the clerk to strike from the jury master list those jurors who declare themselves unqualified to serve. As noted above, the statute seeks to ensure that only qualified jurors are empanelled. Accordingly, in order to determine whether it appears beyond a reasonable doubt that the error did not contribute to the verdict, we must determine whether the statutory violation in fact resulted in an unqualified juror being empanelled.

¶ 90. The circuit court held that Vera understood English sufficiently to fairly and impartially hear the

case, that is, that Vera was not, in fact, an unqualified juror, despite his answer on the juror qualification form. As noted above, the majority does not hold that the circuit court applied an incorrect standard of English language competence, as a statutory or constitutional matter, and neither do I. We are required, then, to defer to the circuit court's factual findings regarding Vera's English-language competence.[3] Because the statutory error did not result in an unqualified juror being empanelled on the defendant's case, it appears beyond a reasonable doubt that the error did not contribute to the verdict within the meaning of *Harvey/Neder/Chapman*. For the same reason—because an unqualified juror did not sit on the defendant's jury—there was no violation of the defendant's jury trial or due process rights under the federal or state constitutions.

---

[3] The evidence supporting the circuit court's ruling includes the following: Vera has lived in the United States for almost 20 years and passed a citizenship test eight years ago; he obtained a valid driver's license; he is gainfully employed, working third shift at Kriger International, making $10.50 per hour; he participated in (but did not complete) instruction in English as a second language; he goes to the casino and plays blackjack; he watches television, especially the Discovery Channel and football, which he understands; when he eats at restaurants he orders off the menu in English; he has a fishing license; he filled out the juror questionnaire without need of assistance; he testified appropriately without the assistance of an interpreter; and he removed himself from the courtroom promptly when asked to do so. True, there is some countervailing evidence in the record (excluding the evidence that is incompetent under Wis. Stat. § 906.06(2)); a reviewing court, however, is not permitted to reweigh the evidence, but must uphold a circuit court's factual findings unless they are clearly erroneous. *State v. Turner*, 186 Wis. 2d 277, 284, 521 N.W.2d 148 (Ct. App. 1994).

¶ 91.   For its part, the concurrence stops short of addressing the "threshold for English language comprehension" and avoids "second-guessing the factual findings of the circuit court judge" by concluding that the statutory error in this case is essentially per se prejudicial. Concurrence, ¶¶ 50, 63–64. This conflicts directly with *Coble*'s holding that this sort of statutory jury selection error is subject to harmless error analysis. *See Coble,* 100 Wis. 2d at 210–11.

¶ 92.   For the foregoing reasons, I would affirm the court of appeals, and therefore respectfully dissent.