STATE of Wisconsin,
Plaintiff-Respondent,

v.

Jacob C. TURNER,
Defendant-Appellant.†

Court of Appeals

*No. 2012AP297–CR. Submitted on briefs November 30, 2012.
—Decided January 23, 2013.*

2013 WI App 23

(Also reported in 827 N.W.2d 654.)

† Petition for Review filed.

229

On behalf of the defendant-appellant, the cause was submitted on the brief of *Kathleen A. Lindgren* of *Lindgren Law Offices, LLC*, West Allis.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Maura FJ Whelan*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Reilly and Gundrum, JJ.

¶ 1. REILLY, J.   John P. Smith (father) and his adult son John P. Smith (son) lived in the same residence in Walworth county.[1] The county sent a summons to "John P. Smith" for jury duty. As John P. Smith, the father, had recently served jury duty, the two assumed that the summons was for the son. The son reported to court and served on a jury that convicted Jacob C. Turner. The summons, unbeknownst to the Smiths, was for John P. Smith, the father.

¶ 2.   Turner argues on appeal that he is entitled to a new trial as his constitutional rights to an impartial jury and due process were violated by the seating of a

---

[1] The name "John P. Smith" is used for illustration. It is not the name of the individuals involved in this case. All other factual assertions are taken from the record.

juror who had not been summoned for service and who did not disclose that fact to the court. Turner also argues he is entitled to a new trial as a posttrial hearing on the juror issue was held without his presence, thereby violating his constitutional and statutory right to be present at every critical stage of his proceedings. We reject Turner's arguments and affirm the decision of the circuit court.

## BACKGROUND

¶ 3. Turner was convicted by a twelve-person jury of attempted strangulation and suffocation, disorderly conduct, and battery. The day after the verdict, the circuit court learned that the son of a summoned juror had served instead of his father. The father and son had the same first and last names, and the same middle initial, phone number, and address.[2] The summons mailed to the residence where the father and son lived included both of their first and last names, middle initial, and home address, as well as a jury number. The summons did not include any other identifying information. Although the father had filled out a juror qualification form months previously, he told the court he thought the summons was for his son as he had been summoned for jury duty a few years before. The two tried calling a phone number on the summons but received an automated recording.

¶ 4. The son reported for jury duty, checked in with a bailiff, took part in voir dire, and was seated on the jury for Turner's trial. The jury found Turner guilty.

---

[2] The father and son did not have the same middle name, i.e., their middle names could have been "Patrick" (father) and "Paul" (son). Hence, the son would not be "John P. Smith, Jr.," but would still have the same middle initial as his father.

Upon learning of the error, the court held a hearing, without notifying either the State or Turner, where it took testimony from the father and son. Based on that testimony, the circuit court stated that it thought the error was "an honest mistake." The court notified both the State and Turner of the issue after the hearing and said it would take no further action unless either party requested a hearing. Turner subsequently filed a motion asking the court to set aside the verdict and grant him a new trial due to the seating of an "improper" juror and the court's exclusion of the defendant at the post-trial hearing. The court, applying the harmless error test, found that a nonprejudicial, "innocent" error had been made and denied the motion. Turner appeals.

## STANDARD OF REVIEW

¶ 5. A circuit court's failure to conform to the statutory procedure in jury selection or to include the defendant in every stage of a criminal trial is reviewed for harmless error. *State v. Carlson*, 2003 WI 40, ¶ 44, 261 Wis. 2d 97, 661 N.W.2d 51; *State v. David J.K.*, 190 Wis. 2d 726, 736, 528 N.W.2d 434 (Ct. App. 1994). The harmless error standard requires a court to find beyond a reasonable doubt that a rational jury would have come to the same conclusion absent the error. *Carlson*, 261 Wis. 2d 97, ¶ 46.

## DISCUSSION

*Juror Selection*

¶ 6. "A criminal defendant is guaranteed the right to a trial by an impartial jury by Article I, Section 7 of the Wisconsin Constitution and the Sixth Amendment

of the United States Constitution, as well as principles of due process." *State v. Louis*, 156 Wis. 2d 470, 478, 457 N.W.2d 484 (1990). The legislature has enacted statutory procedures involving the prequalification and summoning of jurors to assist courts in the seating of impartial juries that represent a broad cross-section of our communities. *See* WIS. STAT. ch. 756 (2009–10).[3]

¶ 7. To serve on a jury, one must be unbiased, qualified for service per WIS. STAT. § 756.02, and survive the voir dire process. The son met all of these requirements. Turner does not allege that the son does not meet these requirements. Instead, Turner argues that the son should not have served on his jury as he was not the true "John P. Smith" to whom the summons was directed and he did not voluntarily disclose his doubts about whether he was the "John P. Smith" who was summoned. The fact is that "John P. Smith" who lived at the address listed in the summons appeared for jury duty and never misrepresented who he was. The fact that the clerk's office meant to summon a different "John P. Smith" at the same address does not make the son an improper juror.

¶ 8. To uphold Turner's conviction, we must find that the circuit court made an error in determining beyond a reasonable doubt that, absent the son innocently and unknowingly serving in the place of his father in the jury selection process, a rational jury would have convicted Turner. *See Carlson*, 261 Wis. 2d 97, ¶ 46. Turner argues that the confidential nature of jury deliberations prevents a court from reaching a level of certainty "beyond a reasonable doubt" as to what the son's impact was on the jury verdict. Turner's

---

[3] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

proffer suffers a fatal flaw: He did not have the father or son testify at the postconviction hearing to show how or why he would have struck the son from the panel had he known the father was the true "summoned" juror. Turner chose not to explore this issue as he had presumably read the transcript from the court's hearing, which showed no bias or prejudice on the part of either. We uphold Turner's conviction.

¶ 9. Like the circuit court, we do not see what difference the innocent error of the son serving instead of his father would have made on the outcome of this case. Turner may not rely on "merely speculative or hypothetical" theories of how he might have been harmed by the error in seeking a new trial. *See State v. Mills*, 107 Wis. 2d 368, 372, 320 N.W.2d 38 (Ct. App. 1982). The circuit court did not err in finding that the "innocent" error did not affect the outcome of Turner's case.

■

¶ 10. Turner next argues that the son, in not volunteering his doubts about whether he had been summoned, demonstrated a "lack of candor." A party seeking to overturn a verdict and receive a new trial based on lack of candor by a juror at voir dire must show that the juror was biased against that party. *State v. Wyss*, 124 Wis. 2d 681, 725, 370 N.W.2d 745 (1985), *overruled on other grounds by State v. Poellinger*, 153 Wis. 2d 493, 505, 451 N.W.2d 752 (1990). Turner's argument fails as he provides no references to the record that show how the son was untruthful, "intentionally tried to conceal information," or gave "incorrect or incomplete answers" during voir dire. *Wyss*, 124 Wis. 2d at 732. Even if Turner had asked questions pertinent to the summons, Turner has not shown how such questions—or the answers received—would have

235

been material to jury selection. *See id.* at 726. We are not persuaded that Turner's tenuous argument for "lack of candor" supports a new trial when Turner alleges no bias, untruthfulness, or even innocent misstatement by the son. *See id.*

### Court Hearing on Jury Selection

■■

¶ 11.   The United States and Wisconsin Constitutions guarantee criminal defendants the right to be present at trial. *David J.K.*, 190 Wis. 2d at 736. Wisconsin Stat. § 971.04(1) also requires a defendant's presence at a number of key proceedings in the trial process, including "[a]t any evidentiary hearing." Sec. 971.04(1)(d).

¶ 12.   Turner contends that he is entitled to a new trial as the circuit court's posttrial hearing with the father and son violated his constitutional and statutory right to be present. Turner theorizes he might have uncovered additional evidence if he had been able to question the father and son at the court hearing, but he does not explain why he did not summon the father and son to his later motion hearing. A transcript of the court's hearing was made available to the parties and was relied upon by Turner at his motion hearing. Turner was given an opportunity at his motion hearing to present evidence but he chose only argument. We find that the error by the court in holding the evidentiary hearing without the presence of the State and the defendant was harmless.

*By the Court.*—Judgment and order affirmed.