STATE of Wisconsin, Plaintiff-Respondent,

v.

Edron D. BROOMFIELD, Defendant-Appellant-Petitioner.†

Supreme Court

*No. 97–0520–CR. Oral argument October 8, 1998.—Decided February 2, 1999.*

(Also reported in 589 N.W.2d 225.)

†Motion for reconsideration denied April 6, 1999.

For the defendant-appellant-petitioner there were briefs and oral argument by *Charles Bennett Vetzner*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Paul Lundsten*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1.   JON P. WILCOX, J.   The defendant, Edron D. Broomfield, seeks review of an unpublished decision of the court of appeals[1] which affirmed his judgment of conviction for burglary and for operating a motor vehicle without the owner's consent, and the order denying his motion for post-conviction relief entered by the Circuit Court for Rock County, John H. Lussow, Judge. Broomfield argues that he was denied his right to a fair and impartial jury because a juror, who prior to trial had overheard information regarding his past alleged misconduct, was biased against him, and this bias infected the jury's deliberations warranting a new trial. The circuit court and court of appeals determined that Broomfield failed to establish that the "extraneous information," as defined in Wis. Stat. § 906.06(2) (1995–96),[2] had tainted the jury, or had ever been discussed by the jury. Thus, the information did not impeach the verdict. We agree, and therefore, we affirm.

## I.

·¶ 2.   The relevant facts are as follows. Broomfield and a companion, Ferdinand Sparger, were charged with burglary and operating a motor vehicle without the owner's consent after the two entered a home

---

[1] *State v. Broomfield*, No. 97–0520–CR, unpublished slip op. (Wis. Ct. App. Oct. 23, 1997).

[2] All references are to the 1995–96 version of the statutes unless otherwise indicated.

where a friend lived with her grandmother, and without permission, drove off with the grandmother's car.[3] Prior to the selection of the jury for Broomfield's August 1995 trial, his counsel informed the court that the jury impaneled for this trial included members of a prior panel as well as several jurors who had served on a previous trial involving Broomfield on different charges. The jury on the previous trial was unable to reach a verdict, resulting in a hung jury and a mistrial. Broomfield's trial counsel expressed concern whether Broomfield could receive an impartial panel. At the State's suggestion, the circuit court agreed to use the voir dire process to determine whether any jurors had any prejudices or not. Trial counsel did not voice any further objection to proceed with trial.

¶ 3. During the jury selection process, eight jurors from the defendant's previous trial were called; five were removed for cause and the three remaining jurors were dismissed on peremptory challenges, two by the defense and one by the State. In the process, the entire panel learned of Broomfield's prior trial and the resulting hung jury.[4] The circuit court explained that

---

[3] Two days earlier, someone had attempted to burglarize the home, and in the process had beaten up the grandmother. Even though she owned the home, and had left most of her things in the home, the grandmother at the time of the auto theft had moved to another daughter's home. The granddaughter's family remained in the home.

[4] Broomfield's trial counsel specifically asked the three jurors from the prior trial if they would be able to decide the guilt or innocence of Broomfield on the merits of this case and not be affected by the prior case. All three nodded affirmatively. Counsel also asked the three jurors separately, and then the entire panel if there was something about the prior case that might affect their ability to listen to this case impartially and weigh the evidence fairly, to which there was no response.

the trial had an "acrimonious ending" with "a lot of disagreement among people," but it specifically instructed the panel that this is a new case and "whatever else went on in another court has absolutely nothing to do with this."

¶ 4.  At trial, a neighbor testified that she phoned the police when she saw two men suspiciously hanging around the victim's home. The neighbor watched the men check the doors, enter the garage and then drive off in the victim's vehicle. The two men were picked up by police and positively identified by the neighbor as the men who took the vehicle. Both Broomfield's friend and her grandmother, the victim, testified that they did not give Broomfield or his accomplice permission to enter the home, to enter the garage, or to use the vehicle.

¶ 5.  Broomfield's accomplice also testified as part of a plea agreement with the State. He indicated that Broomfield suggested that they steal the car and then sell it. When they were stopped by the police, he stated that they agreed to say that the victim's granddaughter had given them permission to take the car even though that was not true.

¶ 6.  The jury found Broomfield guilty on both counts. Following the conviction, he filed a motion for post-conviction relief alleging ineffective assistance of counsel. At the August 1996 hearing on the motion, one of the jurors who had served on the jury, Gerald McCann, testified that before court was in session, he had overheard a man and a woman discussing Broomfield. They said he was "a gangster" and a troublemaker with pending trials, that he beat up a

<hr>

Counsel then wanted to know if the panel's knowledge of Broomfield's prior charges caused them to think he is guilty in this case. Again, no one responded affirmatively.

bunch of kids and that he was involved in "drive-bys." He understood that one of them had been on a previous jury involving Broomfield, and that neither of them wanted to be on another trial. He stated that he "kind of shrugged [the information] off a little bit," but was interrupted by Broomfield's appellate counsel before he could explain why.

¶ 7.   When asked if he had discussed the information he had overheard with anyone, McCann stated that he had no specific recollection of telling the other jurors. He testified that the only information he could remember being discussed during jury deliberations that related to the previous trial was how long it had lasted; a woman wanted to know if she would be home in time for lunch. McCann also testified that, as he told the court during voir dire, he set aside other information and confined his decision solely on the facts presented.

¶ 8.   Broomfield's trial counsel also testified at the motion hearing. Counsel stated that he was concerned about the jury panel because a number of the potential jurors had served on the previous hung jury, some of whom looked quite frustrated at the end of trial, and that there may be prior jurors who were annoyed that Broomfield was not convicted in the prior case. It also concerned him that these prior jurors were aware of the earlier charges brought against Broomfield. He did believe the voir dire process was an adequate procedure to eliminate the problem. However, there were no questions asked of the jury panel, by the judge or attorneys, whether they knew anything else about, or knew Broomfield in any way.[5]

---

[5] At the post-conviction hearing, Broomfield's trial counsel indicated that he did not consider the possibility that there could have been some possible discussion among prior jurors

¶ 9.   The circuit court found that prior to the jury selection, juror McCann heard some mention of a hung jury, but could not be specific about what was said. As to his testimony about discussions in the jury room, the court found it to be "very indefinite and nebulous." The court also found that juror McCann's testimony that he was fair and impartial and that he and the jury followed the instructions was believable.

¶ 10.   The circuit court further determined that based on Broomfield's trial counsel's history of exceptional representation, including an "excellent job" in this case, and because the decisions were a matter of trial strategy, his performance was not deficient. In addition, the court held that based on the overwhelming evidence in this case, Broomfield suffered no prejudice. Accordingly, the court rejected Broomfield's contention that the jury was biased by any improper information it heard, or that a new trial was warranted. The court affirmed the verdict and Broomfield appealed.

¶ 11.   The court of appeals affirmed. Addressing the extraneous information,[6] the court concluded that even assuming juror McCann was competent to testify, he could not state with specificity one single extrane-

and those on the panel who were unfamiliar with Broomfield. Even if he had considered that, he testified that he would not have acted differently.

[6] Broomfield raised two other arguments before the court of appeals: (1) defense counsel was ineffective for failing to object when the venire learned of his prior bad acts and by failing to move to strike the three jurors from the prior panel for cause; and (2) an erroneous jury instruction violated his constitutional right to remain silent. The court of appeals rejected both contentions, and Broomfield appears to have abandoned these arguments on appeal before this court.

ous fact that had actually been discussed by the jury. Therefore, the evidence presented by Broomfield, at the post-conviction motion, was insufficient to impeach the verdict. Broomfield petitioned this court for review which we granted.

## II.

■

¶ 12.   We will briefly discuss the standard analyses for juror bias. In *State v. Messelt*, 185 Wis. 2d 254, 518 N.W.2d 232 (1994), this court explained what testimony by jurors was barred under Wis. Stat. § 906.06(2),[7] and what testimony was competent under the statute. Section 906.06(2) does not prevent jurors from testifying for purposes of determining whether a juror failed to reveal potentially prejudicial information during voir dire. *Messelt*, 185 Wis. 2d at 267. Section 906.06(2) also provides two limited exceptions to the rule against juror testimony: jurors can testify whether "extraneous prejudicial information was

---

[7] Wisconsin Stat. § 906.06(2), is a codification of the common law rule prohibiting juror testimony on the deliberative process of the jury, testimony that might impeach the verdict. Section 906.06(2) provides as follows:

> INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received.

improperly brought to the jury's attention" or whether "any outside influence was improperly brought to bear upon any juror." *See also, Messelt*, 185 Wis. 2d at 274.

## III.

¶ 13.   We first consider whether juror McCann failed to reveal potentially prejudicial information during the voir dire. The question is whether juror McCann should have revealed, in response to voir dire questioning, the information or discussion he overheard about the defendant before the court was in session.

¶ 14.   The proper time to determine whether a juror is impartial is on voir dire examination. *Messelt*, 185 Wis. 2d at 267. The voir dire, with its peremptory strikes and strikes for cause, is the prime instrument of the common law designed to assure an impartial jury and a fair trial. *State v. Shillcutt*, 119 Wis. 2d 788, 812, 350 N.W.2d 686 (1984) (Heffernan, C.J., concurring). The effectiveness of voir dire, however, is dependent upon the responses provided by prospective jurors and there are no guarantees that a juror will respond honestly, accurately or completely. *Messelt*, 185 Wis. 2d at 268.

¶ 15.   In *State v. Wyss*, 124 Wis. 2d 681, 370 N.W.2d 745 (1985),[8] this court set forth a two-step test to follow when bias is alleged to have resulted from a juror's failure to reveal information on voir dire. In

[8] *State v. Wyss*, 124 Wis. 2d 681, 370 N.W.2d 745 (1985), overruled on other grounds by *State v. Poellinger*, 153 Wis. 2d 493, 504–05, 451 N.W.2d 752 (1990).

*Wyss*, we held that in order to be awarded a new trial in such instances, a litigant must demonstrate:

> (1) that the juror incorrectly or incompletely responded to a material question on *voir dire*; and if so, (2) that it is more probable than not that under the facts and circumstances surrounding the particular case, the juror was biased against the moving party.

*Wyss*, 124 Wis. 2d at 726.

¶ 16.   The State argues that *Wyss* is not applicable because there is no evidence that juror McCann improperly withheld information or that he provided incomplete or incorrect answers to the questions asked during voir dire. The defendant admits that the absence of any accusations that juror McCann improperly withheld information eliminates one possible indication of bias, and renders the *Wyss* test inapplicable. Nevertheless, the defendant maintains that other, countervailing considerations present a "strong case for finding implied if not actual juror bias." The defendant points to the inflammatory nature of the information juror McCann overheard and the possibility that the negative information was discussed by the jury and/or considered by McCann himself. Thus, he maintains juror McCann's "presumed bias" ripened into actual bias.

■

¶ 17.   The record reveals that neither the circuit judge nor the attorneys asked the jury panel if they knew the defendant or if they knew anything, other than what was explained during voir dire, about the defendant. Because juror McCann was never specifically asked, his responses could not have been incorrect or incomplete. We find that the defendant has failed to

satisfy the first prong of the test in *Wyss*; accordingly, we will not address the second prong.

## IV.

¶ 18.   We next address whether any "extraneous prejudicial information was improperly brought to the jury's attention" or whether "any outside influence was improperly brought to bear upon any juror" such that the verdict may be impeached. Wis. Stat. § 906.06(2). Specifically, we must determine whether the testimony of juror McCann falls within the first of these exceptions.

¶ 19.   Under Wis. Stat. § 906.06(2), the party seeking to impeach the verdict must demonstrate that a juror's testimony is admissible under § 906.06(2) by establishing (1) that the juror's testimony concerns extraneous information (rather than the deliberative process of the jurors), (2) that the extraneous information was improperly brought to the jury's attention, and (3) that the extraneous information was potentially prejudicial. *State v. Eison*, 194 Wis. 2d 160, 172, 533 N.W.2d 738 (1995). After the circuit court determines whether the party has satisfied § 906.06(2), it determines whether one or more jurors engaged in the alleged conduct and whether the error was prejudicial. *Eison*, 194 Wis. 2d at 172–73.

¶ 20.   In this case, the circuit court did not explain its rationale for permitting juror McCann to testify or its finding that his testimony relating to any discussions in the jury room was "very indefinite and nebulous." We independently review the record to determine whether it provides a basis for the circuit court's implicit determination that juror McCann was competent to testify about potentially prejudicial infor-

477

mation improperly brought to the jury, but that the defendant failed to prove that the jury was biased by any improper information, or that a new trial was warranted. *Id.* at 173.

¶ 21.  Extraneous information is information which a juror obtains from a non-evidentiary source, other than the "general wisdom" we expect jurors to possess. *Messelt*, 185 Wis. 2d at 275. Extraneous information does not extend to statements which simply evince a juror's subjective mental process; rather, it refers to information "coming from the outside." *Id.* (quoting *Shillcutt*, 119 Wis. 2d at 798).

¶ 22.  Juror McCann overheard information from a non-evidentiary source. He testified that he overheard two other people talking about a prior hung jury involving the defendant, and other bad acts allegedly committed by the defendant, prior to the jury selection process. The information juror McCann possessed was extraneous.

¶ 23.  The extraneous information, in order to fall within the exception of Wis. Stat. § 906.06(2), must also be potentially prejudicial. The level of prejudice required for purposes of determining competency under § 906.06(2) is necessarily lower than prejudice needed to successfully impeach a verdict. *Messelt*, 185 Wis. 2d at 276. Information may be potentially prejudicial if it conceivably relates to a central issue of the trial. *Eison*, 194 Wis. 2d at 176.

¶ 24.  Here, the extraneous information that juror McCann overheard was potentially prejudicial. The information related to the defendant's character and consisted of other, unrelated acts committed by the

478

defendant, evidence which likely would not have been admissible during the trial.[9]

¶ 25. We further conclude that the extraneous and potentially prejudicial information was improperly brought to the jury's attention. Information not on the record is not properly before the jury even if only one juror is exposed to it. *Messelt*, 185 Wis. 2d at 279, 280 n.17.

¶ 26. Because the information juror McCann possessed was extraneous and potentially prejudicial information that was improperly brought before the jury, we conclude, as the circuit court implicitly did, that he was competent to testify under Wis. Stat. § 906.06(2).

¶ 27. After determining whether testimony is competent under Wis. Stat. § 906.06(2), courts must conduct two additional analyses before deciding whether a new trial is warranted. First, the circuit court must determine by clear, satisfactory, and convincing evidence that the juror made or heard the statements or engaged in the conduct alleged. *Messelt*, 185 Wis. 2d at 281. Only if the evidence is clear, satisfactory, and convincing must the court then make the legal determination of whether the extraneous information constitutes prejudicial error requiring reversal of the verdict. *Id.*

¶ 28. McCann's testimony satisfies the first of these inquiries. The circuit court found that prior to

---

[9] Other acts evidence may be admitted for limited reasons under Wis. Stat. § 904.04(2), such as proof of motive or intent, if it is relevant, and more probative than prejudicial. Wis. Stat. §§ 904.04(2), 904.01 and 904.03. Such evidence is not admissible to prove conformity with character. Section § 904.04(2).

jury selection, juror McCann heard some mention of a hung jury, but could not be specific about what was said. We disagree. Juror McCann testified that he overheard two individuals calling Broomfield a gangster, a troublemaker, that he beat up a bunch of kids and that he was involved with "drive-bys." On this point, juror McCann was unequivocal. The circuit court's finding to the contrary is clearly erroneous. *See* Wis. Stat. § 805.17(2).

¶ 29.   As a result, we must determine whether as a matter of law, the information in juror McCann's possession constitutes prejudicial error requiring reversal of the verdict. *Messelt*, 185 Wis. 2d at 281. This is a question of law which we review without deference to the circuit court. *Id.* at 281–82. As we stated in *Messelt*, this analysis will focus on whether there is a reasonable possibility that the information in juror McCann's possession would have a prejudicial effect upon a hypothetical average juror. *Id.* at 282.

¶ 30.   We conclude that the information juror McCann overheard would not have had a prejudicial effect upon a hypothetical average juror. We first point to the reliability of the information juror McCann overheard between two individuals who were possibly on a prior hung jury involving the defendant. As the circuit court explained, there was a lot of disagreement among those jurors who served on the hung jury. Overhearing comments between two displeased panel members is quite unlike a potential juror reading information in the newspaper or hearing it on the news. The information has little indication of trustworthiness. *Cf. Messelt*, 185 Wis. 2d at 259, 271 (unconfirmed "gossip" told to a juror years earlier about the defendant was not reliable). Juror McCann indicated as much when he testified that he "shrugged it off a little bit."

¶ 31. Moreover, as the circuit court stated, the evidence in support of the jury's verdict was overwhelming. The jury heard eyewitness testimony describing the burglary and the taking of the victim's vehicle. The jury learned that Broomfield was picked up by police while driving the vehicle and was then identified by the eyewitness as one of the burglars. Broomfield's accomplice testified to the plan to steal and then sell the car, as well as the their agreement to claim they had permission to take the car. The victim and her granddaughter refuted the claim that Broomfield had permission to take the vehicle from the garage.

¶ 32. In addition, at the post-conviction hearing, juror McCann testified that he had no specific recollection of telling the other jurors any of the information that he had heard prior to jury selection. He also stated that the information did not affect him—he "kind of shrugged it off a little bit." The circuit court found that the evidence, juror McCann's testimony, was "indefinite and nebulous" as to whether the jury discussed Broomfield's alleged past behavior while deliberating. The circuit court's finding in this regard will be affirmed unless clearly erroneous. Wis. Stat. § 805.17(2). Our review of the record supports the circuit court's determination that the evidence relating to any conversations during deliberations is too indefinite and equivocal to justify a new trial. Because we conclude that the information juror McCann overheard would not have had a prejudicial effect upon a hypothetical average juror, we affirm both the judgment and the order.

*By the Court.*—The decision of the court of appeals is affirmed.