STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael W. CARLSON, Defendant-Appellant.†

Court of Appeals

*No. 01–1136–CR. Submitted on briefs October 29, 2001.— Decided November 13, 2001.*

2001 WI App 296

(Also reported in 638 N.W.2d 646.)

† Petition to review granted 1-29-02.

264

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Steven L. Miller* and *Miller & Miller* of River Falls.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Eileen W. Pray*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., Peterson, J.

¶ 1. HOOVER, P.J. Michael Carlson appeals a judgment of conviction and an order denying postconviction relief after a jury found him guilty of second-degree sexual assault, as a repeater, contrary to WIS. STAT. §§ 940.225(2)(a) and 939.62(1)(c).[1] He contends that one of the jurors could not understand English sufficiently to serve as a juror and therefore he is entitled to a new trial. We conclude that the trial court's finding that the juror understood English sufficiently to fairly and competently try the case was not clearly erroneous and that a new trial is therefore unnecessary. We affirm the judgment and order.

BACKGROUND

¶ 2. The Brown County clerk of court sends a juror qualification questionnaire to prospective jurors. One of the questions is whether the prospective juror understands the English language. If a person responds "no" to that question, it is the clerk of court's practice to

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

automatically disqualify that person from jury duty and to remove the person's name from the list of prospective jurors.

¶ 3. One of the jurors who served on Carlson's jury, Tony Vera, checked "no" on the jury qualification questionnaire in response to the question, "Can you understand the English language?" However, for an unexplained reason, the clerk did not automatically disqualify Vera. His name was entered into the computer for random jury selection, and he was placed on the jury panel for Carlson's case.

¶ 4. During voir dire, the jury panel was not asked whether any of the jurors had difficulty understanding English. No one asked Vera any individual questions in voir dire. During its deliberations, the jury sent a note to the judge that stated, "We believe that you need to talk to Tony. It is our belief that he does not understand most of the trial proceedings. We would like you to evaluate this situation." The court set forth three possible responses to the note and discussed the options with counsel. Counsel presented concerns that questioning Vera might be seen as pressuring him to change his vote. In light of those concerns, the court decided not to take any action on the note.

¶ 5. The jury found Carlson guilty. The trial court polled the jury and each juror, including Vera, individually answered "yes" to the question, "Is that your verdict?"

¶ 6. Carlson filed a motion for postconviction relief requesting a new trial based on Vera's alleged inability to understand English. The trial court held an evidentiary hearing on Carlson's postconviction mo-

267

tion.[2] At the hearing, Vera, Carlson's counsel, the clerk of court, Vera's work supervisor and another juror testified.

¶ 7. Carlson's counsel and the prosecutor questioned Vera at length in English and without the aid of an interpreter. Vera testified that he has lived in the United States for almost twenty years and that he became a citizen eight years ago. Vera took the written test to obtain his driver's license and passed it. He testified that to become a citizen he passed a citizenship test that had one oral question in English and one written question in English. Vera testified that he had studied English as a second language in Green Bay. He stated that he had read and filled out the jury qualification questionnaire by himself. He testified that he liked to watch the Discovery Channel on television and that he also watched and understood football. Vera testified that he had filed income tax returns with the help of H&R Block, a tax preparer. He stated he went out to eat at restaurants and ordered off the menu in English. When asked to describe what he does to get ready for work, Vera was able to explain after the question was rephrased.

¶ 8. Carlson's counsel asked Vera whether he understood the witnesses at Carlson's trial. The State objected on the basis of WIS. STAT. § 906.06(2),[3] and the

---

[2] Judge Michael G. Grzeca presided over the jury trial, entered the judgment of conviction and sentenced Carlson. Judge Mark A. Warpinski, who replaced Judge Grzeca, conducted the evidentiary hearing on Carlson's postconviction motion and issued the order denying it.

[3] WISCONSIN STAT. § 906.06(2) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon

court sustained the State's objection. Vera then testified as an offer of proof that he did not understand the witnesses or judge at trial, that he was confused during the trial, and that he had tried to tell the bailiff before jury selection that he did not speak English.

¶ 9. Another juror testified that Vera did not seem to understand her when she asked him for a cigarette during one of the breaks prior to deliberations. Due to the court's ruling with respect to WIS. STAT. § 906.06(2), counsel submitted a written offer of proof concerning events that occurred after the case was submitted to the jury. The offer of proof alleged that Vera had difficulty ordering a sub sandwich, that he did not meaningfully participate in the deliberations, and that the jurors asked the bailiff for an interpreter for Vera.

¶ 10. Vera works on an assembly line at Krieger International, a furniture factory. Chad Watermolen, Vera's work supervisor, testified that Vera had problems with English at work. He also testified that Vera had been let go from his job but was brought back because he was a good worker. Watermolen further testified that Vera drove an automobile to work and that they went fishing together. He stated that Vera was able to get a fishing license and understood the arrangements for going fishing. During Watermolen's testimony, Vera entered the courtroom. The court asked Vera to wait

the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received.

outside the courtroom, and Vera responded to these oral directions by exiting the courtroom.

¶ 11. At the close of the testimony, the trial court noted: "This all rises and falls on whether . . . Mr. Vera understands the English language." The court recognized that due process requires a juror to have sufficient understanding of the English language to participate in jury deliberations. The parties agreed that, if the court were to find that Vera had a sufficient understanding of the English language to serve as a juror, that finding would be dispositive of all the issues raised in Carlson's postconviction motion.

¶ 12. The trial court found that Vera had "a sufficient understanding of the English language to serve as juror based upon the record that was made here." The court based its finding on "all of the evidence that has been presented to the court on whether Mr. Vera had a sufficient understanding of the English language to allow him to participate as a juror in our system." The court denied Carlson's motion for a new trial because it found that Vera had sufficient understanding of the English language to serve as a juror. Carlson now appeals.

ISSUE

¶ 13. Carlson argues that the trial court must accept Vera's subjective opinion (and that of another juror) that he did not understand English well enough to fairly and competently hear the case. Carlson also argues that the court did not identify a standard for comprehension or, alternatively, that it did not apply a standard consistent with due process. We disagree. Allowing a juror's subjective opinion as to his or her ability to comprehend testimony at trial would be an

270

open invitation to mischievous attacks on verdicts. We conclude that the trial court properly considered all the evidence that informed on Vera's ability to comprehend English, and found that he understood English well enough to fairly and impartially hear the case, regardless of Vera's opinion. It applied the correct statutory standard. Because credible evidence supports the trial court's finding, it was not clearly erroneous.

DISCUSSION

¶ 14. The trial court's findings of fact will be upheld unless they are clearly erroneous. WIS. STAT. § 805.17(2). The trial court determined that a new trial was unnecessary because Vera's level of English comprehension was sufficient to satisfy due process requirements. The decision to grant a new trial is within the trial court's discretion and will not be overturned absent an erroneous exercise of that discretion. *State v. Yang*, 196 Wis. 2d 359, 365, 538 N.W.2d 817 (Ct. App. 1995). We affirm the trial court's decision because the record shows that the court considered the facts of the case and arrived at a conclusion consistent with applicable case law. *Id.*

¶ 15. Carlson also argues that the trial court erred by excluding the evidence in Vera's and the other juror's offers of proof. He argues that this evidence was extraneous information and therefore was not barred by WIS. STAT. § 906.06(2). We disagree. Vera's statements, and what is essentially the opinion of the other juror, do not constitute extraneous prejudicial information improperly brought to the jury's attention. This proffered evidence is not information "coming from the

outside." *See State v. Broomfield*, 223 Wis. 2d 465, 478, 589 N.W.2d 225 (1999) (citation omitted).

¶ 16. In *Tanner v. United States*, 483 U.S. 107, 117 (1987), the Court interpreted the federal counterpart to WIS. STAT. § 906.06(2) and drew a distinction between external and internal influences on juries. The Court determined that jurors are not competent to testify about internal matters that may have influenced their verdict. *Tanner*, 483 U.S. at 117–18. It decided further that whether a juror sufficiently understood the English language was not a question of extraneous influence. *Id.* at 119. Evidence concerning Vera's understanding of English would be an internal influence on the verdict. Under § 906.06(2), Vera and the other juror were incompetent to testify about the effects of Vera's comprehension of trial testimony on the jury's deliberations.

¶ 17. In the context of a hearing-impaired juror, a criminal defendant has a due process right to be tried by jurors who comprehend testimony. *State v. Turner*, 186 Wis. 2d 277, 284, 521 N.W.2d 148 (Ct. App. 1994). Carlson asserts that the correct standard of English comprehension for jury service is that the juror "must substantially comprehend the evidence and arguments presented at trial." WISCONSIN STAT. § 756.02 requires only that prospective jurors "understand the English language" in order to serve as a juror.[4]

¶ 18. In *State v. Coble*, 100 Wis. 2d 179, 301 N.W.2d 221 (1981), our supreme court determined that

---

[4] WISCONSIN STAT. § 756.02 provides that:

Every resident of the area served by a circuit court who is at least 18 years of age, a U.S. citizen and able to understand the English language is qualified to serve as a juror in that circuit unless that resident has been convicted of a felony and has not had his or her civil rights restored.

the Milwaukee County juror qualification questionnaire was too restrictive in requiring a prospective juror to be able to write in English. *Id.* at 196. "The history of chapter 756, Stats., demonstrates the development of a legislative policy favoring the reduction of statutory exemptions, exclusions and disqualifications so that the jury would be selected from a broad cross-section of the citizenry. . . ." *Id.* The court determined that a person could have sufficient understanding of the English language to serve on a jury without being able to write in English. *Id.* at 191–92.

¶ 19. Here, Vera testified at the postconviction evidentiary hearing. When a challenged juror testifies, the trial court is in the best position to determine the juror's level of understanding. *See State v. Brunette*, 220 Wis. 2d 431, 441, 583 N.W.2d 174 (Ct. App. 1998) ("We defer to the trial court's decision particularly because of the court's ability to judge the demeanor of the juror . . .").

¶ 20. The trial court made specific findings of fact. The court indicated that filling out a jury qualification questionnaire indicated "some fundamental ability" to understand English. Vera testified that he read and filled out the jury questionnaire by himself. The court noted that Vera responded appropriately to some "very sophisticated questions" posed by both counsel. It pointed out that Vera appeared in court "without the need of an interpreter to assist him in responding to questions."

¶ 21. Carlson suggests that the court placed too much reliance on the fact that Vera had passed a citizenship test. The court found the fact that Vera had to pass an English test to become a citizen a "helpful" indicia of his ability to understand English. The court noted that, in order to pass the test, Vera had to answer

a written question and an oral question in English. However, the court did not rely solely on the citizenship test. The court also noted that Vera would have had to understand English to pass a written test and a road test to get a driver's license. Finally, the court relied on the fact that Vera was gainfully employed, described as a good employee, and able to enjoy community services and activities as an indication of his ability to understand English.

¶ 22. The trial court also made the following specific findings at the postconviction evidentiary hearing:

> Mr. Vera was asked to leave the courtroom and when asked promptly removed himself from the courtroom. Mr. Vera took the oath that was administered and responded appropriately. Mr. Vera took the witness stand and responded to questions. Mr. Vera has also participated in English as a second language class at the Family Service Association. He also testified that he went to college but quit because he couldn't understand the teachers.
>
> . . . .
>
> When asked to describe what he does to get ready for work, Mr. Vera said he didn't understand the question and when asked again he then responded, well, I take a shower, I get dressed and then I go to work. He told us about the fact that he was working third shift. His native language is Lao.

¶ 23. The trial court found the ultimate fact that Vera sufficiently comprehended English based on the underlying facts evinced at the postconviction hearing. The court's finding was not erroneous. Moreover, the court's decision not to grant a new trial was an appro-

priate exercise of discretion because it found Vera had a sufficient understanding of English to ensure Carlson's trial was fair and impartial. A reasonable judge could conclude that Carlson was not entitled to a new trial because Carlson already had a fair and impartial trial. The finding properly rested on evidence before the court rather than the subjective opinions of Vera and one other juror. The court properly determined Vera's English comprehension from the testimony and did not rely on Vera's inadmissible conclusory opinion of his own understanding of English.

¶ 24. Carlson also argues that (1) his statutory rights to a qualified jury were prejudicially violated and (2) his trial counsel was constitutionally ineffective. Both of these arguments depend on Carlson's contention that Vera did not sufficiently understand English so as to serve as a juror. Because we sustain the trial court's finding that Vera sufficiently understood English, we need not address these arguments.

¶ 25. We conclude that the trial court considered the evidence that informed on Vera's ability to understand English and found that he understood English well enough to ensure Carlson a fair and impartial trial.

*By the Court.*—Judgment and order affirmed.