**COURT OF APPEALS
DECISION
DATED AND FILED**

**June 27, 2019**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2017AP1184-CR**

Cir. Ct. No. **2013CF3598**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARWAN MAHAJNI,

DEFENDANT-APPELLANT.

APPEAL from a judgment and orders of the circuit court for Milwaukee County: TIMOTHY G. DUGAN and JEFFREY A. WAGNER, Judges. *Orders reversed and cause remanded with directions*.

Before Sherman, Blanchard, and Fitzpatrick, JJ.

¶1 BLANCHARD, J. Marwan Mahajni appeals a judgment convicting him of kidnapping and second degree sexual assault following a jury trial, as well as a subsequent order denying a post-conviction motion for a new trial without

holding an evidentiary hearing.[1] Mahajni makes the implied argument that he is entitled to an evidentiary hearing to give him an opportunity to prove that jurors received extraneous prejudicial information during deliberations, which would entitle him to a new trial. He bases this argument on affidavits from two jurors who aver that a bailiff told jurors during the period of jury deliberation that a deadlock on any count was not an option.

¶2 We conclude that the circuit court erred in failing to grant the evidentiary hearing that Mahajni requested in a motion for reconsideration, because the juror affidavits constitute an allegation that at least one juror received extraneous prejudicial information and Mahajni is entitled to a new trial if this allegation is proven by clear and convincing evidence. Accordingly, we reverse the court's denial of Mahajni's motion for reconsideration and remand for an evidentiary hearing.

## BACKGROUND

¶3 The State charged Mahajni with one count of kidnapping and five counts of second degree sexual assault. Following a trial in 2014, the jury found Mahajni guilty on the kidnapping count and on a single count of second degree sexual assault, and acquitted him on the other sexual assault counts.

¶4 In 2017, Mahajni moved for a new trial based on the allegation that a bailiff shared extraneous prejudicial information with jurors between the time they were excused to deliberate and when they returned a verdict. In support, Mahajni

---

[1] The Honorable Timothy G. Dugan presided at trial and entered the judgment of conviction. The Honorable Jeffrey A. Wagner addressed all post-conviction motions, including the reconsideration motion at issue in this appeal.

submitted the affidavit of a private investigator, who averred that four jurors had told her that during deliberations they had been informed, either directly by a bailiff or through the foreperson purporting to relay information received from the bailiff, that the jury was not permitted to deadlock. In other words, the bailiff allegedly told some jurors that the jury had no alternative but to reach unanimous verdicts of guilty or not guilty. Mahajni's motion included a request for a "hearing," presumably an evidentiary hearing. The circuit court denied the motion without holding an evidentiary hearing.

¶5 Mahajni moved for reconsideration, repeating arguments made in the initial motion and again requesting an evidentiary hearing. Mahajni supported the reconsideration motion with two new affidavits.[2] The new affidavits were sworn to by jurors Felicia Givens and Devonshra Thurman. Mahajni also attached documentation purporting to identify the last names of the two bailiffs who had been assigned to the court during deliberations (one for each day of deliberations).

¶6 Both juror affidavits convey essentially the same allegation: a bailiff informed jurors sometime during jury deliberations, and without qualification, that the jury could not deadlock.[3] By referring to statements made "during deliberations," the strong implication of both affidavits is that the bailiff said this out of the hearing of the circuit judge, counsel, or the parties.

---

[2] We refer to the private investigator's affidavit in order to provide background, but we will now proceed to ignore its contents and address only the two juror affidavits submitted with the reconsideration motion. On appeal, Mahajni does not base any argument on the investigator's affidavit. The State challenges the investigator's affidavit on hearsay grounds, but we need not address that argument.

[3] In pertinent part, Givens averred that a bailiff "told us that we had to find the defendant guilty or not guilty[;] we could not be a hung jury," and Thurman averred that the foreperson told jurors, including Thurman, that the bailiff had said that the jury could not deadlock.

¶7    The circuit court denied the motion for reconsideration, without holding an evidentiary hearing. The court ruled that the juror affidavits and bailiff documentation did not provide sufficiently precise details, including how the bailiff's information allegedly influenced the decisions of individual jurors to vote guilty. Mahajni appeals.

## DISCUSSION

¶8    Mahajni argues that the circuit court erred in denying his motion for reconsideration of his motion for a new trial without holding an evidentiary hearing.[4] He contends that the court misinterpreted WIS. STAT. § 906.06(2) (2017-

---

[4] Mahajni's briefing on appeal only implicitly argues that the court erred in failing to hold an evidentiary hearing, but we proceed as if he makes this argument explicitly. Mahajni's explicit request is that we reverse his conviction and grant his motion for a new trial. However, obviously implied in this argument is that Mahajni seeks, in the alternative, reversal of the order denying his motion for a new trial and remand with directions that the circuit court hold an evidentiary hearing, without our ordering a new trial.

We deny Mahajni's explicit request that we direct the circuit court to hold a new trial because it is for the circuit court, not this court, to determine, by clear and convincing evidence, whether extraneous prejudicial information reached the jury, meriting a new trial. **State v. Broomfield**, 223 Wis. 2d 465, 479, 589 N.W.2d 225 (1999) (before a new trial can be ordered, "circuit court must determine by clear, satisfactory, and convincing evidence that the juror made or heard" alleged statements of extraneous information); *see also* **Manke v. Physicians Ins. Co. of Wis.**, 2006 WI App 50, ¶42 n.16, 289 Wis. 2d 750, 712 N.W.2d 40 ("A *circuit court* may conclude that an affidavit is sufficiently thorough to permit it to decide[,] without further proceedings[,]" that a new trial based on extraneous prejudicial information is merited.) (emphasis added). Here, the circuit court has not made such a determination, but instead concluded that the affidavits did not provide a legally sufficient allegation of the prejudicial effect the extraneous information had on the jury. We may not exercise the circuit court's discretion in making the required factual inquiry. *See id.*, ¶¶21, 48 (evaluating circuit court's clear and convincing evidence determination under clearly erroneous standard).

Turning to the relief that Mahajni implicitly requests, as we explain in the text, Mahajni argues that the circuit court applied erroneous standards in denying his post-conviction motion. Implicit is Mahajni's contention that, even if we do not order a new trial, Mahajni is entitled to an evidentiary hearing based on these errors. Mahajni's post-conviction motion included a request for an evidentiary hearing, and on appeal he acknowledges the standards required for obtaining such a hearing. We address and reject in the text all arguments that the State makes on appeal

(continued)

4

18).[5]   As we discuss in more detail below, that rule of evidence identifies as incompetent certain categories of evidence and establishes that a circuit court may not rely on these incompetent categories of evidence to determine whether jurors were subjected to extraneous prejudicial information.  More specifically, Mahajni argues that the court improperly construed § 906.06(2) to require Mahajni to provide competent evidence to prove that the jury was *in fact prejudiced* by extraneous information.  Mahajni further argues that, under the correct standards, the juror affidavits are sufficiently specific to entitle him to a new trial if the affidavits' averments are proven by clear and convincing evidence at an evidentiary hearing.  We agree with Mahajni that the court erred in denying his motion without holding an evidentiary hearing to determine whether a bailiff informed any juror during deliberations that the jury could not deadlock.  The court erroneously based its decision on two incorrect propositions:  that Mahajni has to present greater factual detail about the alleged extraneous prejudicial information, and that he has to present proof of actual prejudice.  Accordingly, we remand for further proceedings consistent with this opinion.

¶9      We begin by explaining the legal standards that circuit courts are to apply at evidentiary hearings, as pertinent here, to determine if new trials are

---

that could support the proposition that we should affirm denial of Mahajni's motion without an evidentiary hearing.

[5] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.  We quote WIS. STAT. § 906.06(2) below in note 8.

merited based on claims of extraneous information.[6] We then turn to the standards used to determine whether an evidentiary hearing should be held. We begin with the substantive standards because an understanding of the substantive standards sets the stage for subsequent discussion about the requirements to obtain an evidentiary hearing.

*I. Legal Standards*

¶10 Before explaining the substantive standards, we briefly emphasize a point that is critical to all analysis that follows. A new trial is required when even *one* juror received information that was extraneous and prejudicial, regardless whether additional jurors received the information. *See* ***State v. Messelt***, 185 Wis. 2d 254, 277-78, 518 N.W.2d 232 (1994) (extraneous prejudicial information claim may be established by "[m]aterial prejudice on the part of even a single juror"); *see also* ***Parker v. Gladden***, 385 U.S. 363, 365-66 (1966) (bailiff's "unauthorized conduct" in speaking with jurors need influence only one juror to violate defendant's confrontation and due process rights, because a defendant is "entitled to be tried by 12 ... impartial and unprejudiced jurors").

---

[6] As we describe in the text, a circuit court may deny a motion for a new trial based on extraneous prejudicial information without holding an evidentiary hearing, based on the insufficiency of the motion. However, under other circumstances a court may *grant* such a motion without holding an evidentiary hearing. Specifically, a circuit court may determine that a hearing is not necessary because one or more affidavits in support of such a motion are sufficiently thorough to allow the court to conclude that "there is clear and convincing evidence of extraneous information that had a probable prejudicial effect on the hypothetical average juror." *See* ***Manke***, 289 Wis. 2d 750, ¶42 n.16. As noted, the circuit court here has not made any determination regarding clear and convincing evidence, and we fail to see any basis to determine that the juror affidavits presented by Mahajni were sufficiently thorough to make such a determination without conducting a hearing. Given this, our focus is on the court's decision to deny Mahajni's reconsideration motion without a hearing.

6

*A. Substantive Standards Applied At Evidentiary Hearing*

¶11   At a hearing on a motion for a new trial based on a claim of extraneous prejudicial information, circuit courts evaluate evidence in a two-step process. *See* **State v. Eison**, 194 Wis. 2d 160, 172-73, 177, 533 N.W.2d 738 (1995).

¶12   Under the first step, the court determines whether any evidence presented in support of the motion that comes from any juror (as opposed to coming from any non-juror witness) is competent under WIS. STAT. § 906.06(2). Under the second step, the court evaluates whether all competent juror evidence, considered along with all evidence not provided by jurors, entitles the defendant to a new trial. *See* **Manke v. Physicians Ins. Co. of Wis.**, 2006 WI App 50, ¶20, 289 Wis. 2d 750, 712 N.W.2d 40 ("'This [second step] is not a requirement of [§ 906.06(2)], since that section deals only with the competency to testify and the admissibility of evidence.'") (quoted source omitted, second alteration in original).[7]  We address these two substantive standard steps in turn.

*1. Step One:  Competency Under § 906.06(2)*

¶13   WISCONSIN STAT. § 906.06(2) defines what evidence is competent in this context.[8]  The statute generally prohibits jurors from testifying or making

---

[7] This is a criminal case, but extraneous prejudicial information claims may be made in civil cases tried to the jury. *See* **Casteneda v. Pederson**, 185 Wis. 2d 199, 211, 518 N.W.2d 246 (1994) (noting that civil litigants enjoy the same right to trial by an impartial jury as do criminal defendants).  Standards governing motions for a new trial in this context are largely the same in both types of cases, including the requirement to make showings that justify the holding of an evidentiary hearing.  *See* **Manke**, 289 Wis. 2d 750, ¶25-26 (civil case) (citing **State v. Marhal**, 172 Wis. 2d 491, 497, 498 n.5, 493 N.W.2d 758 (Ct. App. 1992)).  Where differences arise in the criminal and civil contexts, we apply criminal law standards.

[8] WISCONSIN STAT. § 906.06(2) provides in pertinent part:

(continued)

averments regarding "any matter or statement occurring during deliberations" or regarding a juror's "mental processes" in connection with deliberations, including anything influencing a juror to "assent to or dissent from the verdict." Sec. 906.06(2). In contrast, a juror may offer testimony or averments regarding whether "extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." *Id.*

¶14 Our supreme court has interpreted WIS. STAT. § 906.06(2) to provide that, for juror-provided evidence to be "competent," the proponent of such evidence must establish the following three elements: (1) the evidence concerns extraneous information, which is information that is "not of record and is not part of the general knowledge we expect jurors to possess"; (2) this information "was improperly brought to the jury's attention"; and (3) the effect of the extraneous information on the jury was "potentially prejudicial." *Eison*, 194 Wis. 2d at 172, 174. Regarding the last element, the circuit court determines whether extraneous information is potentially prejudicial without considering any evidence about the actual effects on juror deliberations, because such evidence is categorically off

---

**(2)** INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict …, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict … or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received.

limits: jurors are not competent to testify regarding the actual effects that extraneous information may have had on their deliberations. *Manke*, 289 Wis. 2d 750, ¶¶34-35, 44-45; *see also Eison*, 194 Wis. 2d at 175-76 (rejecting argument that defendant must identify "results" that the extraneous information had on mental processes of jurors in deliberating).

¶15 This three-element step of evaluating whether the evidence is competent is designed to screen out some claims at an early stage in order to protect jurors from harassment by losing parties, to foster "unhindered" deliberations, and to promote finality of litigation. *See State v. Marhal*, 172 Wis. 2d 491, 495-96, 493 N.W.2d 758 (Ct. App. 1992) (WIS. STAT. § 906.06(2) reconciles "competing interests" by carving out an exception to the general rule against allowing the use of juror testimony to challenge verdicts for extraneous prejudicial information).

### 2. Step Two: Ground For New Trial

¶16 Having ascertained whether any juror-provided evidence is competent, circuit courts turn to the second step of the extraneous prejudicial information analysis, under which the court considers the nature of any competent juror testimony and other evidence presented to determine if a new trial is warranted. *See Manke*, 289 Wis. 2d 750, ¶¶20-21, 26. This second step begins with a factual determination as to whether there is clear and convincing evidence that at least one juror did in fact receive extraneous information. *See State v. Broomfield*, 223 Wis. 2d 465, 479, 589 N.W.2d 225 (1999); *Eison*, 194 Wis. 2d at 172-73, 177-78; *Manke*, 289 Wis. 2d 750, ¶¶34, 36, 46-48 (relying on "competent" juror evidence and disregarding "incompetent" juror evidence to address whether juror received extraneous information). If the court determines

that extraneous information reached any juror, "the court must then determine, as a matter of law," whether there is a "reasonable possibility" that this information "would have had prejudicial effect upon a hypothetical average jury." ***Eison***, 194 Wis. 2d at 177-78. If the court determines that there is a reasonable possibility of prejudice, the court orders a new trial, *see **Broomfield***, 223 Wis. 2d at 479-80, because a defendant has a right to be tried by an impartial jury and to have counsel confront the information used to convict the defendant, *see **Eison***, 194 Wis. 2d at 173.

### B. *Showing To Obtain Evidentiary Hearing; Standard Of Review*

¶17   Bearing in mind the two substantive steps of the above analysis used to determine whether to grant a new trial, we turn to the issue of how a circuit court determines whether an evidentiary hearing is merited. In order to be entitled to an evidentiary hearing, the defendant must make showings that the defendant could produce evidence at the hearing sufficient to satisfy both steps of the above analysis: to the extent the motion depends on juror-provided evidence, a showing that any such evidence offered is competent under WIS. STAT. § 906.06(2); and a showing that any allegations supported by competent juror and other evidence, if true, warrant a new trial. *See **Manke***, 289 Wis. 2d 750, ¶25 (citing ***Marhal***, 172 Wis. 2d at 497, 498 n.5); *see also **id.***, ¶¶25-37 (referring to these showings as "preliminary showing[s]" of competency and of "substantive grounds" for a new trial). This is consistent with the rule that applies to all post-conviction motions, whether based on a claim of extraneous prejudicial information or not, that an evidentiary hearing "is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief." *See **State v. Allen***, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433.

¶18    The preliminary showings are required to obtain an evidentiary hearing in order to prevent fishing expeditions based on speculation and to prevent "dissatisfied litigants" from harassing jurors or upsetting the finality of litigation "propelled by the hope, rather than the likelihood, of discovering something with which to overturn the jury's verdict." *Marhal*, 172 Wis. 2d at 498.

¶19    We review de novo whether a defendant bringing a post-conviction motion based on extraneous prejudicial information makes the showings required to receive an evidentiary hearing. *State v. Miller*, 2009 WI App 111, ¶62, 320 Wis. 2d 724, 772 N.W.2d 188 (citing *Manke*, 289 Wis. 2d 750, ¶19); *see also Allen*, 274 Wis. 2d 568, ¶9 (de novo review of the sufficiency of post-conviction motions in general to merit evidentiary hearings).

¶20    With that background, we review the circuit court's decision to deny Mahajni's reconsideration motion without first holding an evidentiary hearing. We now explain why we conclude that Mahajni made a showing of competent juror-provided evidence and a showing that a new trial is warranted if the allegations advanced by Mahajni are true, establishing the need for an evidentiary hearing.

## II. Mahajni's Showing Of Competent Evidence

¶21    Mahajni contends that the averments of the two juror affidavits here meet each of the three elements of the competency requirements of WIS. STAT. § 906.06(2). We reiterate the elements: "'(1) that the juror[] testimony concerns extraneous information (rather than the deliberative process of the jurors), (2) that the extraneous information was improperly brought to the jury's attention, and (3) that the extraneous information was potentially prejudicial.'" *See Manke*, 289 Wis. 2d 750, ¶19 (quoting *Eison*, 194 Wis. 2d at 172).

11

¶22    The State apparently concedes that the two juror affidavits meet the first element.  This apparent concession is appropriate, because the information alleged to have been provided to jurors here is "neither of record nor in the general knowledge and accumulated life experiences [that] we expect jurors to possess."  *See Manke*, 289 Wis. 2d 750, ¶29 (citing, among other authority, **State v. Shillcutt**, 119 Wis. 2d 788, 794, 350 N.W.2d 686 (1984) (defining extraneous information as knowledge "from the outside")).

¶23    Turning to elements two and three, the State argues that the affidavits provide insufficiently specific facts on either element under **Allen**.  That is, the State contends the affidavits fail to allege "who, what, where, when, why, and how" regarding Mahajni's allegation that extraneous information was improperly brought to the jury's attention and that the information was potentially prejudicial.  *See Allen*, 274 Wis. 2d 568, ¶23 (post-conviction motions that allege the "five 'w's' and one 'h,'" that is, "who, what, where, when, why, and how" with sufficient "material factual objectivity … will necessarily include sufficient material facts for reviewing courts to meaningfully assess a defendant's claim").  We now explain why we reject the State's **Allen** argument, concluding that the affidavits allege sufficient material facts for the circuit court to "meaningfully assess" elements two and three of the competency showing.  We then address the State's individual arguments on those topics.

¶24    Using the terminology of **Allen**, we conclude that the affidavits allege as much of the basic "who, what, where, when, why, and how" needed to "meaningfully assess" whether Mahajni has made a showing of competency pursuant to WIS. STAT. § 906.06(2), as it has been interpreted in case law.  The affidavits allege that jurors were told that the jury could not deadlock (the what), during deliberations (the when and where), and that this information was given to

12

at least one juror by the bailiff (the who and how). To address the why—that is, why the averments of the two jurors are relevant to Mahajni's claim that the verdict was potentially prejudiced by extraneous information—we now turn to element three of a showing of competency, "potential prejudice."

¶25 The alleged extraneous information was, at a minimum, potentially prejudicial because it was "conceivably related to a central issue of the trial." *See Broomfield*, 223 Wis. 2d at 478; *see also id.* ("[T]he level of prejudice required [for competency purposes] … is necessarily lower than prejudice needed to successfully impeach a verdict."). As Mahajni pointed out in his motion to the circuit court and suggests again on appeal, if a bailiff told any juror, without qualification, that the jury could not deadlock on any count, this raises the potential for at least one juror to vote to convict on a count in order to join a majority vote, rather than based on the belief that the State proved guilt beyond a reasonable doubt. This potential is not merely "conceivably related to a central issue of the trial," but clearly implicates *the* central issue, namely whether the State had proven Mahajni's guilt beyond a reasonable doubt based on a unanimous verdict. *See Kelley v. State*, 51 Wis. 2d 641, 645-47, 187 N.W.2d 810 (1971) (noting Wisconsin Supreme Court's long standing disapproval of "coercive element" of jury instructions used in other jurisdictions asking dissenting jurors to consider if their doubts are reasonable if their positions make no impression on the majority of the jury).

¶26 To explain further, the alleged extraneous information that the jury could not deadlock goes to the heart of the jury's obligation to process all evidence and argument presented at trial and apply the jury instructions. The alleged extraneous information would have been the functional equivalent of a coercive jury instruction coming from the circuit court that conflicted with the court's

earlier, proper instructions that the jury had to be unanimous in its verdicts *and* convinced of guilt beyond a reasonable doubt as to any guilty verdict.[9] *See id.*; *State v. Dodson*, 219 Wis. 2d 65, 87-88, 580 N.W.2d 181 (1998) (misleading and contradictory jury instructions are a sufficient basis for a new trial); *see also State v. Ott*, 111 Wis. 2d 691, 696, 331 N.W.2d 629 (Ct. App. 1983) (juror's bringing dictionary definition into deliberations created sufficient prejudice to require a new trial because definition was broader than, and therefore conflicted with, pertinent jury instruction). We use the word coercive, because it would have effectively instructed jurors that they could not dissent from a final majority vote. *See Weaver v. Thompson*, 197 F.3d 359, 366 (9th Cir. 1999) ("In effect, the minority jurors were told that they had two choices: give in to the majority position, or manage the same coup pulled off by Juror # 8 in [the film] *Twelve Angry Men*" of convincing all other jurors to change from a pro-guilty position to a pro-not guilty position.).

¶27 We now address the State's arguments, beginning with element two, which is whether extraneous information was brought to the jury's attention. On this topic, the State argues only that the affidavits lack details regarding the circumstances in which jurors allegedly were informed that they could not deadlock. We do not discern the State to argue that this information could, in the words of WIS. STAT. § 906.06(2), be "brought to the jury's attention" in any way that was not "improper[]," or more specifically to argue that it could be "proper" for a bailiff to share this information with jurors. *See* § 906.06(2) ("except that a juror may testify on the question whether extraneous prejudicial information was

---

[9] As would be expected, the circuit court properly gave the jury the standard instructions about the State's burden of proof and the requirement of juror unanimity on each verdict.

*improperly* brought to the jury's attention or whether any outside influence was *improperly* brought to bear upon any juror") (emphasis added).

¶28    As to the State's insufficient detail argument, the State points out that neither affidavit:  physically describes any bailiff; specifies the time during deliberations when a bailiff allegedly provided information; or identifies where jurors were physically located when the information was provided to any of them. However, the State fails to explain, and we fail to see, how the omission of any of these details individually, or all of them collectively, is significant.  These are incidental details of the type that could be expected to be filled in at an evidentiary hearing.  For example, whether such a conversation occurred in a courthouse hallway or instead in a jury room would not matter.  And, there can be no doubt that there was at least the potential for communication of this type to have occurred between one or more bailiffs and one or more jurors after the court excused jurors to deliberate and before they returned to the courtroom with their verdicts.

¶29    It is significant that the extraneous information alleged here does not relate to particular evidence or to an obscure issue at trial.  The shared content of the affidavits is simple:  jurors were informed by a bailiff that the circuit court would not be relieving jurors of their duties unless and until they returned unanimous verdicts on each count charged, with the obvious implication that jurors would take seriously a statement on this topic coming from a bailiff.  *See Parker*, 385 U.S. at 365 ("[T]he official character of the bailiff—as an officer of the court as well as the State—beyond question carries great weight with a jury ....").  And, as to timing, as long as this extraneous information was received by any juror before the jury settled on its verdicts, it would not matter when the bailiff made the alleged statement during the period of jury deliberation.

¶30     The State asserts that the affidavits "give no clue" as to what prompted the bailiff to provide extraneous information. Putting to the side the fact that Thurman averred a facially plausible motivation (that "some" "jurors" asked the bailiff whether the jury could deadlock on "some counts"), the State fails to explain how anyone's perception of the bailiff's motivation could matter in assessing whether the affidavits allege that a juror received extraneous prejudicial information.

¶31     The State also appears to intend to argue that, because the Givens and Thurman affidavits diverge from each other in some respects regarding how the jury received the alleged extraneous information, neither provides sufficiently specific detail to merit an evidentiary hearing. The Givens affidavit avers that "the bailiff told us" this information, while the Thurman affidavit avers that "[t]he foreperson informed" the jury "that the bailiff said" this information. The State's argument on this point is underdeveloped. But it is sufficient to note that, even if only one of these averments could be true to the exclusion of the other, an allegation would remain that at least one juror was provided with extraneous prejudicial information. As we already explained, this would be sufficient. *See Messelt*, 185 Wis. 2d at 277-78; *see also State v. Poh*, 116 Wis. 2d 510, 521-22, 343 N.W.2d 108 (1984) (juror may be competent to testify that extraneous information was brought to jury's attention by someone from outside the jury or by one of the jurors themselves).

¶32     Regarding "potential prejudice," the State contends that the juror affidavits fail to provide "adequate, specific allegations." The State does not dispute that jurors would have been potentially prejudiced by the extraneous information alleged here. Instead, the State essentially faults the affidavits for not clearly explaining how the averring jurors were *in fact* prejudiced by being told

they could not deadlock. But we have already explained that the question is never whether jurors were in fact prejudiced—not at the preliminary stage of determining whether to hold an evidentiary hearing, nor at such a hearing. That would require an inquiry into the substance of deliberations, a topic on which jurors are not competent to testify. *See Manke*, 289 Wis. 2d 750, ¶¶44-45; *Eison*, 194 Wis. 2d at 175-76. Rather, the circuit court is to make a determination as to whether the hypothetical average jury would have been prejudiced, based on all pertinent, competent evidence under the legal standards we have described. *See Manke*, 289 Wis. 2d 750, ¶45 (circuit court "determines the effect" of extraneous information "as a matter of law," applying an "objective" standard to measure prejudice). For this reason, Givens's averment regarding her opinion on the effect that the alleged extraneous information actually had on jurors is not pertinent to the analysis at any stage. *See id.*, ¶¶34-36 (upholding circuit court decision to hold an evidentiary hearing based on certain averments in affidavit, disregarding incompetent averments that purported to describe how extraneous information actually affected deliberations).

¶33 The State makes a difficult-to-track argument based on the fact that the circuit court read the verdicts aloud and then polled each juror. The State contends that, even assuming that jurors received the alleged extraneous information, the jurors demonstrated that they were not potentially prejudiced by the extraneous information when each answered yes to whether the verdicts read by the court were their verdicts. This argument ignores the possibility that a hypothetical average juror would have voted guilty on a count based in part on the juror's belief that the court would not excuse the jury from its service before the jury reached unanimous verdicts on all counts. This hypothetical average juror would presumably have given an accurate yes answer to the polling question, but

17

the accurately read guilty verdict would nonetheless have been improperly influenced.

¶34    Having established that Mahajni has made a showing of competency under WIS. STAT. § 906.06(2), we now address whether his motion for reconsideration makes the other showing sufficient to merit an evidentiary hearing by presenting facts that, if true, establish that he is entitled to a new trial. *See Manke*, 289 Wis. 2d 750, ¶¶25-26.

*III. Mahajni's Showing Of Evidence Sufficient To Merit A New Trial*

¶35    To make the required showing necessary to obtain an evidentiary hearing, a defendant must allege facts that, if true:  (1) provide clear and convincing evidence that the jury received the extraneous information, and (2) establish that there is a reasonable possibility that the extraneous information would have had a prejudicial effect upon a hypothetical average juror. *See Broomfield*, 223 Wis. 2d at 479 (citing *Messelt*, 185 Wis. 2d at 281); *Eison*, 198 Wis. 2d at 177-78.  In the criminal context, this requires showing that the State could not prove beyond a reasonable doubt that the extraneous information did not contribute to the guilty verdict. *See Eison*, 194 Wis. 2d at 178; *Poh*, 116 Wis. 2d at 529.    This beyond-a-reasonable-doubt standard reflects concern over constitutional rights enjoyed by criminal defendants that include the right of an accused to be present for the offering of, and have representation to address, all information used to convict the accused. *See Poh*, 116 Wis. 2d at 525-26.

¶36    Mahajni acknowledges that he cannot obtain an evidentiary hearing without making a showing alleging facts that entitle him to a new trial, based on the standards we have described.  However, both parties fail to explicitly connect their arguments—focusing on competency—to the required showing that a new

trial is warranted. This deficiency in the briefing need not detain us for several reasons.

¶37 First, as noted, we determine de novo whether Mahajni's motion is sufficient to entitle him to an evidentiary hearing. Second, many of the same considerations pertinent to Mahajni's showing that the juror affidavits here are competent as evidence are also pertinent to an assessment of the showing of whether a new trial is warranted, *see Manke*, 289 Wis. 2d 750, ¶¶25-26, 37, including our independent assessment of the prejudice of the objective risk of prejudice posed by the currently undisputed averments of the juror affidavits, *see Broomfield*, 223 Wis. 2d at 480 (whether extraneous information actually received by a juror creates sufficient prejudice to require reversal "is a question of law which we review without deference to the circuit court").

¶38 For many of the same reasons that we conclude that the juror affidavits provide a sufficient showing of competency, we conclude that the affidavits provide a showing of facts that, if proven true, would warrant a new trial based on a claim of extraneous prejudicial information. In making this determination, we assess, as pertinent, "such factors as the nature of the extraneous information and the circumstances under which it was brought to the jury's attention; the nature of the state's case; the defense presented at trial; and the connection between the extraneous information and a material issue in the case." *See Poh*, 116 Wis. 2d at 530. As we now discuss, given the nature of the particular alleged extraneous prejudicial information here, there is no reason to consider aspects of the State's case or the defense presented at trial.

¶39 To begin, the same averments that we deem sufficient to show that the alleged extraneous information was brought before the jury's attention as part

of our competency showing analysis would, if true, allow the circuit court to determine that there is clear and convincing evidence that a juror heard the extraneous information.

¶40     Given that conclusion, we further conclude that if at least one juror was told that the jury could not deadlock, this created, at a minimum, a reasonable possibility that the extraneous information had a prejudicial effect.  That is, this information could have this effect on a hypothetical average juror and the State provides no good reason for us to conclude otherwise.  Therefore, there is at least a reasonable doubt whether the alleged extraneous information "'contribute[d] to the verdict obtained'" against Mahajni.  *See **Poh***, 116 Wis. 2d at 529 (quoted source omitted).  We reach this conclusion for the same reasons that support our conclusion, explained above, that this information created the potential prejudice required for the competency showing.  As we have explained, the alleged message that the jury could not deadlock related to Mahajni's right to be convicted only upon a unanimous verdict of guilt beyond a reasonable doubt.  We fail to see how the specifics of the evidence or arguments presented by the parties at trial have any bearing on the possibly prejudicial effect on a hypothetical average juror of the alleged cannot-deadlock statement of the bailiff.

¶41     In sum, we conclude that Mahajni has made sufficient showings to entitle him to an evidentiary hearing on his claim that the guilty verdicts are invalid because the jury was prejudiced by extraneous information.

¶42     Accordingly, we remand to the circuit court to conduct an evidentiary hearing consistent with this opinion.  Both sides will have the opportunity to present any relevant evidence, including any juror testimony that the circuit court deems is competent under WIS. STAT. § 906.06(2).  The court, not

Mahajni's counsel nor counsel for the State, should conduct any examination of any jurors called by either side, though counsel for both parties may suggest appropriate questions. *See After Hour Welding, Inc. v. Laneil Mgmt. Co.*, 108 Wis. 2d 734, 743, 324 N.W.2d 686 (1982). The court will determine if there is clear and convincing evidence that any juror received extraneous information. *See Broomfield*, 223 Wis. 2d at 479; *Eison*, 194 Wis. 2d at 173. If so, the court should consider whether the facts proven at the hearing created a reasonable possibility, as a matter of law, that the information would have had a prejudicial effect on a hypothetical average jury in these circumstances. *See Eison* 194 Wis. 2d at 177-78. We repeat that if the court reaches the prejudice determination stage, the State bears the burden of proving beyond a reasonable doubt that extraneous information actually received by any juror did *not* contribute to the jury's unanimous guilty verdicts. *See id.* at 178.

## CONCLUSION

¶43 For the above reasons, we remand this case to the circuit court for further proceedings consistent with this opinion.

> *By the Court.*—Orders reversed and cause remanded with directions.
>
> Not recommended for publication in the official reports.